No. 23.—JAMES CHAMBERS, plaintiff in error, vs. WILLIAM M. COLLIER, et al. defendants in error.

[1.] Notwithstanding the issue submitted to the Jury be one exclusively of fact, and there have been two concurrent verdicts, yet if the finding be clearly against law, the verdict will be set aside and a new trial granted: especially where an important principle is involved, and the verdict is to be followed by serious consequences to the party against whom it is found.

[2.] The Act of 1833, to compel Sheriffs and Coroners to deliver possession of real estate, sold by them under execution, to the purchaser, declares, that " when any Sheriff or Coroner shall sell any real estate, by virtue of and un- "der the authority of any execution, it shall be the duty of such Sheriff or " Coroner, (as the case may be,) upon application, to put the purchaser, " his or her agent or attorney, in possession of the real estate sold; Provided, " that this Act shall not authorize the officer making the sale, to turn out any " other person than the defendant in execution, his heirs, or their tenants, if " such other person were in possession at the time of the rendition of the " judgment, or if such person has acquired the possession under the judgment " of a Court of competent jurisdiction, or claims under the person or persons " acquiring such right by the judgment of such court"—Held, that if possession be not given immediately and before the next term of the Court, or before the officer making the sale goes out of office, that it can only be done under an or- der of the Court, with notice to the tenant.

[3.] Where a purchaser at Sheriff's sale enters into a subsequent agreement with the defendant in execution, whereby he is suffered to remain on the land; he is considered as having waived his statutory right, and he cannot, upon the failure or refusal of the party, at the end of two years and eight months, to comply with his contract, call upon the officers who made sale of the land to deliver him possession.

Forcible entry. Certiorari tried before Judge FLOYD in Pike Superior Court, August Term, 1847.

For the facts of the case, the reader is referred to the opinion delivered by the Supreme Court.

ARNOLD, for the plaintiff in error.

GIBSON & ALLEN, for the defendants in error.

By the Court—LUMPKIN, J. delivering the opinion.

In December, 1839, James Chambers bought of Charles

McDowell, as executor of P. Scott, deceased, a lot and a half of land in the 9th district of originally Monroe, now Pike county, at the price of $1615 52, for which he gave his note, with John W. Coppedge as security—due 25th of December, 1840. The debt not having been paid at maturity, it was sued to judgment, and a re-covery had at the March Term, 1842, of Pike Superior Court, for $1258 73, the balance due thereon. On the first Tuesday in March, 1843, there still remaining due and unpaid on the execu-tion, $1127 20, the same tract of land for which the debt was con-tracted, was sold by Mathew Orr, Sheriff, when McDowell, the plaintiff, became the purchaser, for the sum of $405. When property of the defendant was sold, as appears by the entry on the the *fi. fa.* on the 3d of June, 1843, in pursuance of a previous agreement, made between Chambers and McDowell, as to the terms of which there is some conflict of testimony, Chambers gave to McDowell his three notes, with Madison R. Chambers John W. and Thomas Coppedge as securities—one for $350 20, due 25th of Dec., 1843 ; another for $373, due 25th of Dec., 1844 ; and the other for $404, due 25th of Dec., 1845—amounting altogether to exactly the balance due apparently on the *fi. fa.*, to-gether with McDowell's bid for the land. The first of these in-stalments was paid, and fifty dollars on the second. On the 26th of October, 1845, McDowell wrote an order to Orr who had ceased to be High Sheriff, but was Deputy to his successor, informing him that he had sold the land occupied by Chambers to William M. Collier, and requiring him to put Collier in posses-sion. Orr requested N. P. Daniel, his co-deputy, to officiate. Daniel, on the evening of the 5th of November, 1845, in company with some four or five others, Collier among the rest, came to the house of Chambers and demanded possession. Chambers refused to surrender, and desired to know by what authority it was exact-ed. Daniel stated that he had none other but the order from McDowell to Orr. Collier remarked that he had come to get possession, and that he meant to have it, and added, angrily, that if it were not for the law he would take Chambers out and stamp him. Some of the company observed to Chambers that resist-ance would be useless, for that the whole district would be sum-moned, if necessary, to dispossess him. His house was then en-tered and his goods removed—some into the yard, and a part of them into the road—and some small articles were broken in the

removal. The family were turned out—the request of Chambers' wife to be permitted to remain during the night on account of the inclemency of the weather, and the feebleness of her health, being refused. The house was closed and Collier took possession of the keys.

On the day ensuing, Chambers took out process, under the statute for a forcible entry and detainer, and a trial was had which resulted in a verdict against him. He applied for and obtained a *certiorari*, which being sustained on the hearing, a new trial was ordered, which terminated as the first. A second *certiorari* was sought upon various grounds, but was dismissed upon argument, it being the opinion of the presiding Judge that there was no sufficient cause shown to sustain said *certiorari*, and it is to reverse this judgment that this writ of error is brought.

Counsel do not agree as to what are the true questions made by the transcript of the record and bill of exceptions. Perhaps this simple view may assist to unravel the tangled skein. The plaintiff's case is made by his petition for a *certiorari* and the return made thereto by the magistrates. He is entitled to all the rights made by these pleadings. In his petition he complains that the law was not administered according to the statement of facts there presented. If it was not, and the statement there made be true and consistent with what transpired in the Justice's Court, he was entitled to the interposition of the Superior Court, for the purpose of correcting all errors committed in the primary tribunal.

Judge Floyd assumed, very properly, that the agreement set up by Chambers in bar of Collier's statutory right to be put in possession of the purchased premises, was a question of fact for the jury, and there having been concurrent verdicts by two successive juries, he determined that he would not disturb their finding and therefore dismissed the *certiorari*.

[1.] Now, as a general rule, this position is correct. We think, however, that the Judge erred in its application to the facts of this case. If the finding of the jury be clearly against law, especially where an important principle is involved and the verdict is to be followed by serious consequences to the party against whom it is found, it becomes the imperative duty of the corrective Court to interfere and to grant a new trial, just as often as the law is disregarded.

What were the issues of fact involved in the trial before the

magistrates? *First,* the possession of Chambers, about which there was no controversy. *Secondly,* his forcible eviction, which was put beyond dispute by the evidence of Daniel, the Deputy Sheriff, who officiated on the occasion. We hold, with the plaintiff's counsel, that to constitute a forcible entry and detainer, there need be only such number of persons or show of force as is calculated to deter the rightful owner from undertaking to send them away or retain his possession, and that he need not wait till he is actually assaulted. *Milner vs. McLean,* 12 *Eng. Com. Law Rep.* 5. Indeed the only fact submitted to the jury, about which there was any contradiction, was as to the terms of the agreement made subsequently to the sale between McDowell and Chambers. If the testimony on the part of Chambers was true, the *fi. fa.* was discharged by the notes of himself and his sureties, given on the 3d of June, 1843, and there was an end to all farther proceedings under it. It was *functus officio,* and the conduct of the Deputy Sheriff and his *posse* was clearly a trespass.

Admit, however, that the jury rejected this evidence altogether. How stands the case, as proven by McDowell's witnesses? That Chambers was permitted to redeem his land; that the three notes were given as collateral security only for the execution; that Chambers was to have a deed whenever the notes were paid, and the *fi. fa.* to be satisfied; the contract to be at an end, provided the notes were not punctually paid, and in the meantime Chambers to remain on the land. This privilege resulted necessarily from the character of the contract. It is an irresistible inference, independent of the proof.

[2.] I ask, after this agreement, had McDowell or his vendee, Collier, the statutory right to be put in possession by the Sheriff by virtue of a sale made two years and eight months previously? The Act of 1823 to compel Sheriffs and Coroners to deliver possession of real estate, sold by them under execution, to the purchaser, declares that "When any Sheriff or Coroner shall sell any real estate by virtue of and under the authority of an execution, it shall be the duty of such Sheriff or Coroner, (as the case may be,) upon application to put the purchaser, his or her agent or attorney, in possession of the real estate sold; *provided,* that this Act shall not authorize *the officer making the sale,* to turn out any other person than the defendant in execution, his heirs or their tenants," &c. *Prince,* 458.

The statute contemplates,—for it expressly says so,—that the possession shall be given *by the officer making the sale.* The sale then, is to be consummated by putting the purchaser in possession at once. Personal property is present, to be delivered whenever it is bid off. Real estate cannot be brought to the block, and hence it is made the duty of the Sheriff or Coroner who sells, to go immediately to the premises and deliver possession to the purchaser—and for this purpose he is authorized to turn out the defendant and his privies.

[3.] Shall he be justified in doing so when the defendant has been suffered to remain in possession two years and eight months. after the sale, under a contract with the purchaser? *His* possession was the possession of McDowell. He bought of McDowell. thereby *attorning* to him and acknowledging McDowell to be in possession, and from that time hence he was, in fact, the tenant of McDowell. The object of the statute, then, was accomplished —the purchaser was *legally* in possession. And when the vendee fails to pay the whole of the second instalment, which fell due 25th of December, 1844, shall the vendor, after such a lapse of time, fall back upon his statutory right, and for a failure of the defendant to comply with his new agreement, claim to be put in possession under his purchase at Sheriff's sale? To allow it would be most manifestly to pervert the object for which this remedy was given. McDowell has waived his statutory right as purchaser, and he must now resort to such other remedies as the law affords, to get possession of his land.

Executions are required by law to be returned to the next Term of the Court after they issue, with the actings and doings of the levying officer thereon. Not only should the levy and sale be indorsed, but likewise the delivery of possession, and if this be not done by that time,—at least before the officer making the sale has gone out of office,—it is not going too far to hold that it shall not be done afterwards, or by a successor, except under an order of the Court, obtained on notice to the tenant. Daniel swears that he knew nothing himself of the sale, nor who was in possession at the time of the levy; and yet he goes, even without the execution being in his hands, and forcibly dispossesses the present occupant of the land ! We have no hesitation in saying that this whole proceeding was irregular in the extreme.

Judgment reversed.