LISSNER *v.* THE STATE OF GEORGIA.

84  669|
99  693|
―――
84  669
120  489

1. To enter upon premises in defiance of the occupant and with such a display of force as reasonably to deter him from maintaining his possession is forcible entry.
2. That the aggressor remained in possession was admissible in evidence to show that he made his entry complete, though he was not charged with forcible detainer.
3. No material error was committed in receiving or rejecting evidence, in charging the jury, or in the points of practice ruled in the course of the trial.

March 14, 1890.

Criminal law. Forcible entry and detainer. Charge of court. Evidence. Practice. Before Judge ATKINSON. Glynn superior court. May term, 1889.

Indictment for forcible entry. The evidence showed that on April 23, 1889, and for some time previously, Wallace was in possession of the premises described in the indictment, under lease from Kaisers. He had consented for defendant to erect and use a stable which immediately adjoined these premises. From the stable a window or door opened on the same premises; across the inside of this opening defendant had nailed boards, and Wallace had nailed boards across it on the outside. On the day mentioned, defendant came with two workmen and began to tear away the boards, upon which Wallace told him he must not come into his (Wallace's) place; and defendant replied that he did not care what Wallace said, that he was coming in, that he was not fighting Wallace but the Kaisers, and that he knew Wallace could get damages, but not out of him. He then excitedly took a hatchet from one of the workmen and knocked down most of the fence around the premises, as well as the boards from the stable window. He then went back through the stable. Wallace did not resist him, and he made no demonstrations towards Wallace personally. A few days afterwards, defendant knocked down the rest of the fence, put rollers under the stable and rolled it on the premises entered, which had not previously been subject to use by defendant without Wallace's permission.

No evidence was introduced by the defendant. From his statement it appears that he claimed the premises as his own, Wallace's use being by his permission, and he had previously notified Wallace that he wanted possession and that Wallace must give up the lot; to which Wallace replied that he had nothing to do with defendant about the matter, but was looking to the Kaisers for his possession. Defendant further stated that he had been using the lot for his horse, and had the window cut in the stable for throwing deposits therefrom

upon the lot, all without complaint, from Wallace; that the boards were nailed inside to keep Wallace's horse from entering the stable; and that he told Wallace, when he knocked off the boards, "not to get scared," that he was not going to hurt him, "but was just coming in on my lot."

After verdict of guilty, he moved for a new trial on the following among other grounds:

(1) Verdict contrary to law and evidence.

(2) Error in allowing Wallace to testify that he had leased the premises, over objection that this could not be shown by parol unless it appeared that the lease was not in writing, as the word "lease" presumed a writing. And error in sustaining an objection to the question of defendant's counsel to Wallace, whether he got the property by parol or written lease; the objection being that the manner of Wallace's holding was irrelevant and immaterial.

(3) Error in admitting evidence of defendant's possession and acts touching the premises at times subsequent to April 23, 1889, over objection that the same was irrelevant, and illegal for all purposes.

(4) Error in charging: The menaces need not necessarily be manifested by words, but may be displayed or manifested by any other acts upon the part of the defendant; Wallace need not have been in any way or to any extent intimidated by the defendant; there need not have been any actual assault by the defendant, or he need not have been afraid of any bodily harm from the defendant; but if the circumstances surrounding him at the time were such as to have inspired a reasonable man with the apprehension that he would be subjected to personal violence at the hands of the defendant unless he yielded to him the possession, and under such circumstances he delivered possession, that would be such a forcible entry as would authorize a conviction.

(5) When the jury asked to be recharged, the judge instructed them that if the conduct of defendant was such as to cause the occupant of the premises reasonably to believe that unless he surrendered the possession there would be a personal difficulty, this would be a forcible entry. And to the question of a juror, whether or not the defendant could be found guilty of trespass, the court replied in the negative and stated that if the violence were directed against the property of the occupant in his absence, this would simply be trespass, but if in the presence of the occupant, this would be forcible entry. The defendant alleges that these charges were illegal, and that the judge should not thus have particularized to the prejudice of the defendant, but should have recharged the entire law of forcible entry.

(6) Error in charging that if it appeared from the evidence that Wallace had embraced the property described in the indictment within his own enclosure, and that he was at that time exercising acts of direct and personal ownership, control and dominion over the property, then he was in possession; and if a person forcibly evicted him from that possession without authority of law, that person would be guilty of forcible entry.

(7) Error in charging: "It can make no difference if this defendant subsequently retained possession of the property; nothing that occurred before or after can be considered by the jury, except in so far as it is an indication of and illustration of the intention with which the entry was made, if you find it was made at all. You may consider whether he remained in possession subsequent to the time of the alleged forcible entry, in determining the time the entry was made, and see if it was made with a view of evicting the person in possession, but only to that extent can it be considered by you."

The motion was overruled, and defendant excepted.

Johnson, Smith &. Johnson, for plaintiff in error.

W. G. Brantley, solicitor-general, by D. W. Roun-
tree, and C. Symmes by J. H. Lumpkin, for the State.

Bleckley, Chief Justice.

1. Though the grounds of the motion for a new trial
are quite numerous, we think no substantial error was
committed by the court, and that the evidence was suf-
ficient to warrant the verdict.  That the possession of
the premises was in Wallace, the prosecutor, and that
Lissner, the accused, entered with a show of force and
in opposition to the will of Wallace, cannot be doubted.
Lissner went to the premises accompanied by two men,
one of the latter carrying a hatchet.  This hatchet
Lissner took, and with it knocked off some slats which
had been nailed across the door of a stable, announcing
to Wallace his purpose to enter; and in answer to Wal-
lace's remonstrances said, "I don't care what you say,
I am coming in"; and he did come in by that means.
Wallace made no resistance, and had he made any, it
most probably would have been useless.  The law did
not require that he should make any in the face of such
a display of force.  That the force used was sufficient
to constitute that element of the offence, see *Chambers*
v. *Collier,* 4 *Ga.* 193; *Minor* v. *Duncan,* 54 *Ga.* 516.

2. The fact that Lissner remained in possession was
admissible in evidence to show his purpose in making
the entry, and to show, also, that he accomplished that
purpose and made his entry effectual.  Although he
was charged with forcible entry only, the completeness
of his entry was illustrated by his retention of posses-
sion, and by the nature and extent of that possession.

3. No evidence material to the substantial merits of
the case was either admitted or rejected erroneously by
the court.  And we are unable to discover any substan-

v 84-43

tial error in the instructions given to the jury. The same may be said as to the minute points of practice which arose, and which the court ruled upon in the progress of the trial. A more extended discussion of these matters would not be useful, as they involve no principle of any importance.

The court did not err in refusing to grant a new trial.

*Judgment affirmed.*