## GEORGE W. HOAG v. JESSE A. PIERCE, ISRAEL COMSTOCK, AND J. D. KEYES.

EVIDENCE IN FORCIBLE ENTRY AND DETAINER.—In an action of forcible entry and detainer, the defendant, for the purpose of showing the character and extent of his possession, may introduce in evidence the deed of his grantor, and that his grantor, before plaintiff's entry, took up the land under the Possessory Act of 1852, and occupied and improved it, even though he failed to comply fully with the Act.

POSSESSION OF LAND.—One who receives a deed of land from another who is residing on a portion of it, and claiming to the boundaries described in the deed, and who then enters on the possession of his grantor, is, in contemplation of law, in possession of the whole tract described in the deed.

POSSESSION NECESSARY TO MAINTAIN FORCIBLE ENTRY AND DETAINER.—One who in the morning enters upon a portion of a tract of land in the possession of another, and incloses it with a fence and puts a house on it before sundown, does

not acquire such a peaceable possession as to enable him to maintain forcible entry and detainer against the possessor, who at sundown of the same day destroys the house and fence and drives him away.

SAME.—The plaintiff in forcible entry and detainer must show an actual, peaceable, and exclusive possession in himself; a scrambling or interrupted possession is not sufficient.

RIGHT TO PROTECT ONE'S POSSESSION.—One who is in the possession of a tract of land has the right to resist and expel an intruder if the resistance and expulsion take place before the possession of the intruder has become actual and peaceable.

IMMATERIAL ERRORS.—A judgment will not be reversed for errors which do not injure the complaining party.

APPEAL from the County Court of Shasta County.

The facts are stated in the opinion of the Court.

*George Cadwalader*, for Appellant.

*J. Chadbourne*, for Respondents.

By the Court, CURREY, J.

In June, 1853, Meredith Meador, for the purpose of obtaining the right to hold and possess a certain tract of the public lands situated on the Sacramento River opposite the present town of Red Bluffs, under and in pursuance of the Act entitled "An Act prescribing the mode of maintaining and defending possessory actions on public lands in this State," (Laws 1852, p. 158,) made an affidavit, describing the land, the possession and enjoyment of which he desired to secure, and stating therein that the description given was not intended to embrace more than one hundred and sixty acres, and that he had not taken up any other claim under said Act, and also to the best of his knowledge and belief there was no existing title or claim to the same. This affidavit was filed in the office of the proper county. The land was surveyed at the time by his procurement by the County Surveyor, and was found to contain one hundred and fifty-four acres. Within ninety days thereafter, he put improvements on the land, partaking of the realty to the value of three hundred dollars, a part of which consisted of a dwelling house, which became occupied by himself and family within the ninety days. He continued to

reside on the premises until in the latter part of October, 1855, during which time he put improvements on the land, amounting in value to about two thousand dollars, and used the property for the purposes of husbandry. In October, 1855, he removed to another place, after which the premises were occupied by his tenants, until he sold and conveyed the same to Pierce, Church and Comstock, by deed bearing date the 17th day of January, 1861, which was duly acknowledged and recorded in the same month. From the time of the execution of this conveyance to the time of the commencement of this action, Pierce, Church and Comstock were in the possession of the Meador tract, by the defendant, Keyes.

On the 29th of December, 1861, which was Sunday, the plaintiff and some four or five men in his employment went upon this tract of land at a point opposite Red Bluffs, taking with them a quantity of lumber, with which they constructed a fence on three sides of a piece of land of about an acre in extent. The fourth side of it was bounded by the Sacramento River. The plaintiff also commenced the erection of a house on the land, which he inclosed on one side, and partly on the other side. At the two ends it was left open, and it was also without a roof. This work was done between the hours of ten in the morning and two in the afternoon. One of the plaintiff's workmen, who was a witness on his behalf, testified that while the work was being performed the weather was wet and dismal, and another of them said it was a rainy day. Near sundown of the same day the defendants came upon the ground, and found one Jordan at the house, whose furniture and provisions, according to his own account, consisted of a bed and two bottles of whiskey. The whiskey, he said, was provided by the plaintiff, in whose employment he was at the time. Pierce asked Jordan what he was doing there, and one of the defendants told him he had come to knock the house down, and then commenced the work of demolition. Upon this Jordan told them not to tear down the house until he could get his things out. The defendants then proceeded to remove the fence, and finished their work by throwing a por-

tion of it and a portion of the house into the river.· Jordan said the reason he did not prevent them was because they were too strong for him. They made no threats, but Pierce said it was customary, when they tore down a house of that kind, to throw the man into the river and the house on top of him; and that it was a good thing the plaintiff was not there; and he also said Comstock was armed. Keyes was in possession of the Meador tract at the time, under Church and the defendants Pierce and Comstock.

A few days afterward the plaintiff commenced an action under the Act concerning forcible entries and unlawful detainers. His complaint contains the usual allegations in such cases, which are traversed by the defendants' answers. The cause was tried in the County Court of Shasta County, and a verdict was found for the defendants, on which judgment was rendered. A motion was made for a new trial, which was denied, and the plaintiff has appealed.

The transcript of the record and statement contains two hundred and thirty-five printed octavo pages, when all that is necessary to present the case might well have been embodied in one sixth the space; but notwithstanding the unnecessarily imposed labor we have examined it and the fifty-nine points of error assigned; all of which, in our view of the case, are immaterial or otherwise invalid.

There can be no doubt of the admissibility of the evidence relating to the taking up by Meador in 1853 of the land called the Meador tract, and of his occupation and improvement of it, even though it were admitted that he failed to so comply with the Act of 1852 as to entitle him in his own right to all the benefits which a complete compliance therewith would have invested him. His possession of the land, for nearly eight years claiming the same, and his sale and conveyance of it to Pierce, Church and Comstock, and their subsequent occupation of it, invested them with the right as against any mere intruder upon it to the possession of the land. Their deed from Meador, with their actual occupation of a considerable portion of the land, extended their possession as against per-

sons having no right or title from a source of paramount proprietorship, to the whole of the Meador tract; and for the entry of the plaintiff and the ouster of them by him of the parcel of land particularly in controversy—had he remained in possession—might have had their action of ejectment. When the plaintiff entered upon the Meador tract, on the 29th of December, 1861, Pierce, Church and Comstock were in legal contemplation, in the actual possession of the land, within the doctrine of *Hicks* v. *Coleman*, 25 Cal. 122, and the cases there cited, and the entry thereon by the plaintiff was a trespass.

The grantees of Meador being in possession of the premises on the day of the plaintiff's entry, it is proper next to inquire, did the plaintiff obtain such an actual peaceable possession of the parcel of land which he inclosed on that day as to give him a right to maintain this action against the defendants for retaking the possession and removing the fence and partly constructed house from the premises? If the possession of the plaintiff was not actual and of sufficiently long standing to become to a legal intent peaceable, then he was not in a condition to maintain his action. In *Treat* v. *Stuart*, 5 Cal. 113, the Court said : " The plaintiff, in an action of forcible entry and unlawful detainer, must show an actual peaceable possession in himself at the time of the entry ; " and in *House* v. *Keiser*, 8 Cal. 500, which was an action brought under the Act concerning forcible entries and unlawful detainers, the Court said that " a party who desires to avail himself of the summary remedy provided by this Act must bring himself clearly within its provisions. He must show a possession, actual, peaceable and exclusive ; a mere scrambling or interrupted possession, or the exercise of casual acts of ownership over the premises is not sufficient." By the ninth section of the Act it is provided that " on the trial the complainant shall only be required to show, in addition to the forcible entry or detainer complained of, that he was peaceably in the actual possession at the time of the forcible entry, or was entitled to the possession of the premises at the time of a forcible holding over." Before the plaintiff could be entitled to recover he was bound to establish a case

from which it could at least be presumed that at the time of the alleged forcible entry and ouster he was peaceably in actual possession. This the statute requires. But instead of this the testimony of his witnesses showed that his own entry was tortious, and that his adverse holding had not yet become quiet and peaceable. He had not yet acquired a *status* affording him the right to resist the defendants' assertion by necessary force of their own right to the possession of the premises, when they came upon the ground and removed the structures erected there by the plaintiff during the same day. His acts of trespass were *in fieri* when the acts of the defendants of which he complains were committed. In such condition of things a mere intruder or trespasser is not entitled to the remedies provided by the statute. (*People* v. *Reed*, 11 Wend. 159.)

The evidence, which was properly introduced before the Court and jury, established beyond controversy the possession of Pierce, Church and Comstock of the parcel of land described in the complaint, and the testimony of the plaintiff's witnesses alone showed that his entry was a trespass, which was resisted before his possession had become, in the sense of the Act, actual and peaceable. If a verdict and judgment had been rendered upon the evidence properly admitted in the case, in favor of the plaintiff, it would have been erroneous. There was no evidence improperly admitted or excluded that could have justly changed the result to which the jury came; so that if the Court committed any errors in admitting testimony, or in instructing the jury, they were of a character that could not by any possibility have harmed the plaintiff. It is only errors which may have injured the complaining party that will authorize this Court to reverse a judgment of the Court charged with having committed them. (*Merle* v. *Matthews*, 25 Cal., and the cases there cited.)

We are of opinion the verdict was right, and that the judgment should be affirmed.

SAWYER, J., concurring.

There was, doubtless, irrelevant testimony admitted on both sides, and the rulings of the Court are not free from errors; but it is clear to my mind that without any of the errors committed the verdict of the jury must have been the same. It is clearly apparent from the evidence properly admitted upon the question of possession—in which it can scarcely be said there was any conflict—that the plaintiff was in the act of attempting to acquire possession by an unjustifiable trespass upon an actual possession in the defendants of long standing; and that this attempt was immediately, upon the same day, interrupted and frustrated by defendants, in the manner stated by Mr. Justice Currey, before the acts of plaintiff had crystallized, so to speak, into that actual, peaceable possession contemplated by law, which constitutes the foundation of the right to maintain the action of forcible entry and detainer.

The Court expressly instructed the jury that the right to the possession could not be determined in this action, and substantially told them that the survey of Meador, and the conveyance to him by defendants, could only be considered with reference " to the extent and boundary of such possession." For the purpose to which this testimony was thus limited, I think the evidence admissible. I am satisfied, from the testimony, that the plaintiff had acquired no such possession, as against the defendants, as would entitle him to maintain this action, and that on this ground the judgment should be affirmed.


SHAFTER, J., dissenting.

I am compelled to dissent from the opinion of my brethren. The only question is whether Hoag had succeeded in dispossessing the tenant of Pierce, Church and Comstock, to a legal intent at the time when the tenant, in company with his landlords, came upon the ground and demolished the house and fence and expelled Jordan, the plaintiff's servant. The

25

building of the fence was not *in fieri* at the time the defendants came upon the premises, but was a fact accomplished; nor was the plaintiff in the act of going within the inclosure with a view to take possession, but was already within it, in the person of his servant. All the steps essential to an ouster by Hoag of the tenant in possession had been taken, and the fact could have had no additional force or meaning imparted to it by lapse of time. On the ground of the acts of Hoag performed upon the land, the tenant of Pierce, Church and Comstock could have maintained ejectment against him. By force of those acts the Statute of Limitations was set in motion in his favor, and he was placed in a position where he was amenable to taxation. The possession of Hoag was undoubtedly a hostile possession, but it was peaceable during the time it subsisted, and that is all that can be said of a possession of the longest duration.