[No. 2,141.]

## JOHN C. BOWERS *v.* CHEROKEE BOB, THOMAS KNIGHT, AND M. R. ROBERTS ET AL.

LEASE WITH A RESERVATION IN IT.—A lease of land containing a provision that the lessor may, during the term of the lease, occupy any house or houses, or occupy any part or the whole of the demised premises, is valid.

WHEN LESSOR MAY MAINTAIN FORCIBLE ENTRY FOR DEMISED PREMISES.—A lease of land, with a reservation in it that the lessor may, during the term of the lease, occupy any part or all of the demised premises, does not prevent the lessor from maintaining forcible entry and detainer against a stranger to the lease for a forcible entry into the demised premises, if the lessor, notwithstanding the lease, continues to occupy the same.

EVIDENCE IN FORCIBLE ENTRY AND DETAINER.—If a lease of land containing a provision that, during the term, the lessor may occupy any part of the demised premises, and if he brings forcible entry and detainer during the term, against a stranger to the lease, to recover the demised premises, he may prove on the trial that, notwithstanding the lease, he was occupying the same when the defendant entered.

EVIDENCE FOR DEFENDANT IN FORCIBLE ENTRY AND DETAINER.—In forcible entry and detainer, the defendant cannot, for the purpose of show-

ing that the plaintiff had only a scrambling possession, introduce evidence to show that during the whole period of the plaintiff's possession, third persons, with whom the defendants were not in privity, were stopping near the demised premises, awaiting an opportunity to enter and take possession, when they could do so without force.

PLAINTIFF'S POSSESSION IN FORCIBLE ENTRY AND DETAINER.—If the occupation of the plaintiff in forcible entry and detainer was acquired and maintained with threats and force, as against third persons not in privity with the defendants, it affords no justification to the defendants for invading the premises, for, as against the defendants, the plaintiff's occupation was peaceable and actual.

EVIDENCE IN FORCIBLE ENTRY AND DETAINER.—In forcible entry and detainer, the defendants may, for the purpose of showing that the plaintiff had only a scrambling possession, prove that, before the entry made by them complained of, they had made attempts to take possession, but were prevented from entering by an exhibition of force by the plaintiff, or his servants.

PEACEABLE POSSESSION IN FORCIBLE ENTRY AND DETAINER.—If, during A.'s temporary absence, B. intrudes into possession of his premises and refuses to leave on demand, and resists A.'s reëntry, by threats and exhibition of force, and A., without relaxing his efforts to regain possession, finally succeeds in doing so, then B. will not acquire such a peaceable possession as will enable him to evict A.

EVIDENCE IN FORCIBLE ENTRY AND DETAINER. — If the plaintiff in forcible entry and detainer, entered upon the demanded premises without resistance, and remained for some weeks in the undisturbed possession, the defendants cannot prove that before his entry they had, under a claim of title, inclosed and occupied the premises, and were thus occupying it when he entered.

INSTRUCTIONS TO A JURY.—It is not error for the Court to refuse instructions to a jury upon propositions of law having no reference to any evidence introduced.

FORCIBLE ENTRY AND DETAINER BY TENANT IN COMMON.—One tenant in common may maintain forcible entry and detainer to recover possession of premises held by several as tenants in common.

CIVIL ACTION.—An action of forcible entry and detainer is a civil action within the meaning of the Act allowing one or more of several tenants in common to bring an action for the protection of the common property.

APPEAL from the County Court of the City and County of San Francisco.

The facts are stated in the opinion.

*B. S. Brooks*, for Appellants.

Parol evidence was improperly admitted to control the effect of the lease from plaintiff to Christy, and his entry under it. (*Lennard* v. *Vischer*, 2 Cal. 37; *Conner* v. *Clark*, 12 Cal. 168; *Ruiz* v. *Norton*, 4 Cal. 355; *Donahue* v. *McNulty*, 24 Cal. 411; *Osborne* v. *Hendrickson*, 7 Cal. 282.)

The Court erred in excluding evidence tending to show that the original entry of plaintiff was forcible, and that his possession was maintained by force and violence, and was not a peaceable possession. The Act is intended only to protect a peaceable possession and not a forcible or scrambling possession. (*McCauley* v. *Weller*, 12 Cal. 500; *Davis* v. *Mitchell*, 36 Cal.; *Hoag* v. *Pearce*, 28 Cal. 187; *Cummins* v. *Scott*, 23 Cal. 526; *Treat* v. *Stuart*, 5 Cal. 113; *House* v. *Keiser*, 8 Cal. 499; *More* v. *De Valle*, 28 Cal. 170.)

The Court erred in excluding the evidence offered of witness Williams, and of Brandt Seguine, and the deed from H. B. Brooks to Knight, and evidence offered in connection with it. The evidence was proper and relevant to show what was the condition of the property in regard to the possession, and what kind of possession the plaintiff had, and what was the extent of his possession. (*Minturn* v. *Burr*, 16 Cal. 107; *Hoag* v. *Pierce*, 28 Cal. 187; *Mitchell* v. *Davis*, 20 Cal. 45; *Watson* v. *Whitney*, 23 Cal. 375; *Tomlinson* v. *Rubio*, 16 Cal. 202; *More* v. *De Valle*, 28 Cal. 172.)

The Court erred in refusing to charge that "one tenant in common cannot maintain this action alone; all the tenants in common must join in the action." (*Clark* v. *Huber*, 20 Cal. 196; *Muller* v. *Boggs*, 25 Cal. 175.)

The Court erred in refusing to instruct the jury as requested that: "If the premises, at the time of the entry complained of, were under lease to a tenant, the landlord

cannot maintain this action; it must be brought by the tenant." (*Treat* v. *Stuart*, 5 Cal. 113; *House* v. *Keiser*, 8 Cal. 499; *Mitchell* v. *Davis*, 20 Cal. 45; *Preston* v. *Kehoe*, 10 Cal. 445.)

*Nathaniel Bennett*, for Respondent.

The possession of the plaintiff was in strict accordance with the terms of the lease, and the parol evidence as to plaintiff's possession was in accordance with the lease, and did not vary or contradict it. Possession is none the less a peaceable possession, because the possessor makes preparations to defend it against threatened attacks; at least such possession is good as against all the world, except those who threaten the force and violence. If A. is in possession of a lot of land, and B. is threatening to intrude upon him with force and violence, C. has no more right to enter upon and oust A. than if B. were not threatening him. So, even if it had been made to appear that certain persons, other than the defendants, were standing in a hostile attitude to the plaintiff, that would be no justification of a forcible entry by the defendants themselves.

One in the actual possession of land has the right to expel an intruder, if the expulsion takes place before the possession of the intruder has become peaceable. (*Hoag* v. *Pierce*, 28 Cal. 187.)

By the Court, Crockett, J.:

This is an action of forcible entry and detainer, in which the plaintiff obtained a verdict and judgment, and the defendants have appealed. The errors complained of relate to the ruling of the Court on questions of evidence, and the giving of certain instructions to the jury at the instance of the plaintiff, and the refusal of certain others requested by the defendants. The alleged forcible entry of the defendants was made

on the 18th of November, 1868; and on the trial there was put in evidence a lease from the plaintiff to one Christy for a larger tract, including the land in contest, which lease was executed on the sixteenth of November, two days before the entry of defendants, and is in the usual form, except that it contains the following clause: "But it is expressly understood by and between the parties hereto, that the said party of the first part may occupy any house or houses, let or relet the same, at any time during the term of this lease, situated upon the above described premises, or occupy or sell any part or the whole of said premises, except the dwelling house in which said lessee now resides." The dwelling house of the lessee was within the larger tract, but not upon the premises in controversy, on which, however, were several small houses or shanties, which, at the date of the lease and for some weeks prior thereto, had been and were occupied by C. P. Duane and others acting in concert with him. The plaintiff claims that Duane and his associates originally entered and continued to occupy the premises, as his servants and agents, and that, notwithstanding the lease to Christy, Duane and his party had the actual possession, as such agents and servants, holding under the plaintiff, and not under Christy, at the time of the entry by the defendants. On the other hand, the defendants maintain that, inasmuch as Christy at the date of the lease was residing within the limits of the larger tract, the lease *proprio vigore*, transferred to him whatever actual possession the plaintiff then had, either by himself or his servants; and that this possession continued in Christy up to the time of the entry by the defendants. Hence they claim that the intrusion was upon the possession of Christy, if any one, and that the plaintiff, not having been in the actual possession, cannot maintain the action. During the examination of the plaintiff as a witness on his own behalf, the Court permitted him to testify (against the objection of the defendants) to the

effect that after the lease to Christy, Duane continued to occupy the premises for the plaintiff, just as he had done before; and this ruling is assigned as error. But, inasmuch as the lease expressly authorized the plaintiff to occupy any part of the demised premises during the term, it was competent for him to prove that he did, in fact, so occupy; and the testimony which was objected to certainly tended to establish that fact. This is not to impeach, contradict, vary, or add to the lease by parol, but only to show that under it and in accordance with its provisions the plaintiff had the actual occupation, and that Christy had not. Nor do we perceive any reason why this provision in the lease is not valid. If the lessor should retain the possession, he would have no right to collect the rents; but, if the parties so stipulate, there is no reason why the lessor may not retain or assume the possession of a part or the whole of the demised premises.

The defendants insisted during the trial that if the plaintiff had any possession it was a scrambling possession, acquired and maintained by threats and an exhibition of force, and was not such a *peaceable* possession as is necessary to maintain the action. With a view to establish that fact, the defendants inquired of a witness for the plaintiff whether there was not, during the whole period of the plaintiff's occupation, a scow so arranged as to defend those on board from shot, and loaded with building material, and a pile driver close at hand prepared to come upon the property, and which was expected by the plaintiff to come upon it; and whether the men in charge of the scow and pile driver were not awaiting an opportunity to enter, whenever they could do so without using force; but the question was excluded by the Court, on the objection of the plaintiff, and this ruling is assigned as error. It was not then proposed to connect the defendants, in any manner, with the party in charge of the scow and pile driver; nor was there then any

offer to follow up this proof with other testimony tending to show that the original entry of the plaintiff was otherwise than peaceful, or that his possession was scrambling and maintained by threats and an exhibition of force. The testimony was properly excluded:

First—Because standing alone it did not tend to prove that the original entry of the plaintiff was not peaceful, and his occupation complete. The fact that others immediately after, or even at the very time of the plaintiff's entry, were awaiting an opportunity to enter, but made no effort to enter, nor attempted in any manner to resist the entry of the plaintiff, or to disturb his occupation afterwards, neither proves nor tends to prove that his entry was not peaceful, and his occupation actual as well as peaceable. An occupation commenced without threats or force, and continued without any attempt to interrupt it, is a peaceable occupation in a legal sense.

Second—If such evidence was competent in an action of this character between the plaintiff and the parties in charge of the scow, or their privies, it clearly is not so in an action against other intruders. If the occupation of the plaintiff was acquired and maintained by threats and force, as against a third party in charge of the scow, with whom the defendants were not in privity, that fact affords to these defendants no justification in law for invading the plaintiff's occupation. As to them, his occupation, if these were the facts, was actual and peaceable. It was not acquired by threats or force as against them; nor did they ever menace it by an exhibition of force prior to their entry. If the Courts were to lend any countenance to the proposition that where there had been a struggle for the possession of land between two adverse claimants, a third party may forcibly evict the person who had *actually* obtained the possession, and afterwards defend himself in an action for forcible entry, on the plea that the occupation of the plaintiff was not "peaceable,"

this form of action would be rendered nugatory in a large class of cases which most require this summary form of remedial justice. But it does not lie in the mouth of a defendant to say that a plaintiff whose *actual* possession he has invaded had not a *peaceable* occupation, because some third person had threatened also to invade it, or even had resisted his original entry. As between adverse claimants struggling for the possession, a different rule prevails. As between themselves, neither can maintain the action against the other until he has acquired an actual possession which has ripened into a *peaceable* occupation—that is to say, "peaceable" as between themselves. But at a subsequent stage of the case the defendants offered to prove "that about a month before the entry complained of, defendants attempted to move the scow upon the land, and were debarred from entering by cannon pointed and a match lighted." This evidence was excluded, on the objection of the plaintiff, and we think the Court erred in this ruling. It was clearly competent for the defendants to prove any fact tending to show that as against them the plaintiff had only a scrambling possession, maintained by force; and though, as we have seen, it was not competent for them to prove that third persons, with whom they were not in privity, had been deterred from entering by an exhibition of force, a different rule applies in respect to a timely effort by the defendants to reënter, which they were prevented from doing only by an exhibition of firearms in a threatening manner. To maintain the action, the plaintiff must show a "peaceable" possession, and it was clearly competent for the defendants to prove that though the plaintiff may have had the actual possession it was not a "peaceable" possession in the sense of the statute. It may frequently be difficult to define the precise point at which a possession ceases to be a scrambling possession, maintained, it may be, by threats and menaces, and has ripened into a peaceable possession. No rule of universal

application can be established in such cases, and each case must, of necessity, be governed by its own circumstances. If A. be in the undisputed occupation of a dwelling house, residing in it with his family, and if, during the temporary absence of the family for an hour, B. should intrude into the possession, barricade the doors, and on the return of A., immediately after, should not only refuse to surrender the possession, but deter him from entering by threats and menaces, and if A. should quietly submit to the wrong, and should leave B. for some weeks or months wholly undisturbed in the possession, it cannot be doubted that B. would have acquired a "peaceable" possession, even as against A., which would enable him to maintain this form of action, if subsequently forcibly expelled by A. Though his original entry may have been fraudulent, and without the slightest color of right, nevertheless, if A. submits to it, and allows him to remain quietly in the possession for a considerable period, he cannot afterwards take the law into his own hands, and repel the intruder by force. The possession, though wrongful, and at first maintained by menaces or violence, will have ripened into a peaceable possession, for a disturbance of which this form of action would be the appropriate remedy. The peace and good order of society demands that an actual and peaceable occupation of real estate, however it may have been originally acquired, shall not be disturbed by violence. But in the case supposed, if A., instead of quietly submitting to the wrong, had immediately come with an armed force, and had endeavored to expel B., but had for a time been successfully repulsed, and without relaxing his efforts had eventually succeeded in driving B. from the premises, it would be absurd to hold that B. had such a "peaceable" possession as would enable him in an action of forcible entry and detainer to evict A., and recover the possession. His possession, though actual, was never "peaceable;" and it would be a mockery of jus-

tice to hold that, under these circumstances, the law would aid the wrongdoer, who had only a temporary, scrambling possession, acquired by fraud or force, and maintained for a time by threats and violence to recover the possession from the former occupant. It was not for cases of that character that the Forcible Entry and Detainer Act was designed to furnish a summary remedy, but for cases wherein a "peaceable" possession has been invaded. In such cases one of the issuable facts is whether or not at the time of the entry complained of the plaintiff had the "peaceable" possession as against the defendants, or only a scrambling occupation, maintained by force or threats, and which had not ripened into a peaceable possession. As already stated, it is often difficult to decide whether an actual possession is a peaceable or only a scrambling occupation; and in the very nature of the case it is impossible to lay down an inflexible rule by which to determine whether a possession is a peaceable or a contested and scrambling possession. Each case must be decided by a jury, on its own circumstances, under proper instructions from the Court.

It may be stated, however, as a general proposition, that if a person enter upon land in the actual and peaceable occupation of another, the possession which he acquires cannot be deemed to be peaceable during the time when it has to be protected by firearms, or other demonstrations of force, against an attempted or threatened reëntry of the former occupant, who manifests to the intruder, by his words and acts, that he intends to reënter at the earliest moment when he can do so without violence, and who is only prevented from entering by an exhibition of firearms, or threats and menaces. Such a possession cannot be justly said to be "peaceable" in any sense, and certainly not in the sense of the statute. If the rule were otherwise, the most deplorable results would ensue. A ruffian might enter a private dwelling without color of right, and in mere wantonness ex-

pel its inmates, barricade the doors, and by an exhibition of firearms prevent the owner from approaching his own dwelling. The owner might make the most determined and persistent efforts to reënter his own dwelling, but be as often repulsed by violence or threats; and if he should ultimately succeed, we apprehend no respectable Court would hold that the intruder had acquired a " peaceable " possession, on which he could maintain an action for forcibly entry against the former occupant. If a different rule prevailed, it would operate as a premium upon lawless aggression and an incentive to the grossest outrages; and no one would be safe in his possession of real property, if it was understood to be the law that any ruffian may intrude upon premises in the actual occupation of another, maintain his possession by force or menaces for a time, and when expelled by the former occupant after repeated unsuccessful efforts to regain the possession, might maintain an action for forcible entry, on the plea that he had acquired a " peaceable " possession. We think the proof offered by the defendants and excluded by the Court, tended to prove that the possession of the plaintiff was not peaceable, and ought to have been permitted to go to the jury.

The defendants inquired of a witness whether he knew the property in the month of June preceding the entry in November. There was no explanation of the purpose with which the question was asked, and the Court excluded it as irrelevant. Without an explanation of its object, we do not perceive its materiality, nor that the defendants were injured by its exclusion. The defendants inquired of their witness, Seguine, who erected the fence around block one hundred and sixty-nine (part of the property in contest), whether he knew the condition of the property and fence at the time of the plaintiff's entry, and he was requested to

describe the fences at that time. What was the condition of the fences on the 20th September, 1868? At what time did the plaintiff enter on that block? Who built the fence across the street from block one hundred and sixty-nine to block two hundred and three? What occurred on block one hundred and sixty-nine on the 20th September, 1868? Who had possession of that ground at the time of the alleged entry (of the plaintiff, we infer)? What use was made of the property, and what was its condition at the time of the entry of the plaintiff? Whether the property is divided by streets or spaces recognized as streets? All which questions were excluded by the Court. Subsequently they offered in evidence a deed from one Brooks to the defendant Knight, for a portion of the premises in controversy, proposing to follow it up with proof of a claim of title from parties who inclosed block one hundred and sixty-nine; but the Court excluded the deed, and these rulings are relied upon as error.

The counsel for defendants insists this proof was competent, not for the purpose of establishing title in the defendants, but as tending to explain the nature of the plaintiff's alleged occupation, and to show that he had not the actual possession. The land in contest is a salt marsh in the margin of the Bay of San Francisco, and is entirely covered with water at high tide. It is not fit for cultivation, nor for any practical use, until it shall have been reclaimed. There is no contest on this point.

The testimony would have been competent if, in connection with the conceded facts, it had tended, in any appreciable degree, to show that the plaintiff *at the time the defendants entered* had not the actual possession. The argument on behalf of defendants on this point is, that inasmuch as the land was a mud flat, covered by the tides, and incapable of being devoted to any useful purpose in its then condition, if the defendants, or those under whom they

claimed, had fenced it in under a claim of title, and had exercised over it such acts of ownership and dominion as were appropriate under the circumstances, this established in them the actual possession; and that the plaintiff could not divest this possession and establish an actual and peaceable possession in himself, by merely entering within their fences and erecting two or three shanties above the water and filling them with an armed force; that they clearly had the right to establish a prior possession of the land under a claim of title, and that it was the province of the jury to decide, under proper instructions from the Court, whether the acts performed by the plaintiff had the effect to divest that possession. This argument, though plausible, is not, we think, sound. If the land, instead of being a mud flat covered by tides, had been an arable field, or a barren rock, inclosed by defendants, or their predecessors, at a prior time, by a substantial fence, so as to leave no possible doubt of their prior possession, and if the plaintiff had entered within this inclosure, had erected several shanties on different portions of it, and filled them with an armed force, claiming the possession, and had not attempted to cultivate the field or devote it to any lawful purpose, or if the barren rock was incapable of use for any practical purpose, nevertheless, if the plaintiff had maintained his position for some weeks or months undisturbed by the defendants, and without any attempt on their part to prevent his entry, or dislodge him afterwards, we apprehend he would have established, as against the defendants, an actual and peaceable possession sufficient, beyond a reasonable doubt, to maintain this action. In such a case, proof of the inclosure by the defendants, and of their prior possession, would be wholly immaterial; because, if proved, it could not benefit them. If, in such a case, the defendants could take the law into their own hands, and by an armed force evict the plaintiff without being liable to an action for forcible entry, there would be but little need for this form

of action. But there are many cases in which it would be competent for the defendants to prove a prior possession. If it was shown that they had resisted the entry of the plaintiff, with such effect as to render it doubtful whether he had acquired the possession, or if, as in *Hoag* v. *Pierce*, 28 Cal. 187, they had immediately proceeded to reassert their possession, before his had ripened into an actual and peaceable occupation, proof of prior possession would have been clearly competent, as explanatory of the transaction, and as tending to show that, at the time of the entry, the plaintiff had not, in fact, acquired the actual or peaceable possession.

But this rule has no application to a case in which the plaintiff entered without resistance, and has remained undisturbed in the possession for some weeks or months. The testimony was, therefore, properly excluded.

We come now to the instructions. The first, second, fifth, sixth, seventh, eighth, and ninth asked by the defendants were properly refused, because there was no testimony in the cause to warrant them. The third and fourth were also properly refused, because there was no testimony in the cause tending to show that the defendants, or those under whom they claimed, had either resisted the entry of the plaintiff, or had sought to disturb his occupation at any time prior to the entry complained of; and if third persons in charge of the scow had threatened the plaintiff's possession, and if he kept an armed force to resist the threatened attack, this did not prove, or tend to prove, that his occupation was not actual and peaceable as against the defendants. This point has already been sufficiently discussed. The tenth instruction was to the effect that if there was more than one forcible entry and detainer of separate parcels of the land, in which entries the defendants did not join, but acted independently and severally, without concert, the action must fail. The only evidence in the case tending to show a separate entry by any of the defendants on a distinct parcel re-

lated to the entry of Roberts, and the verdict and judgment were in his favor. There was no evidence that there was any separate entry by the other defendants, and as to them the instruction was properly refused.

The twelfth instruction refused was to the effect that "one tenant in common cannot maintain the action alone; all the tenants in common must join in the action."

We think this instruction was properly refused. The statute provides that "all persons holding as tenants, joint tenants, or coparceners, or any number less than all, may jointly or severally bring or defend any civil action for the enforcement or protection of the rights of such party." (Stats. 1857, p. 62.) If the action of forcible entry and detainer is a *civil* action, it is within the letter, as it clearly is within the spirit, of this provision. However this form of action may originally have been classified, we entertain no doubt that it is a "civil action" within the intent of the statute above quoted. Section thirteen of the Forcible Entry and Detainer Act provides that "the proceedings in or upon the trial of any such action shall be the same as in *other civil cases*, except as herein otherwise provided, and judgment shall be entered, execution issued, and other proceedings, both before and subsequent to the judgment, be had as in *other civil cases;*" and section seven requires the pleadings to be verified as "*in other civil cases.*" The action is commenced by complaint and summons, and the defendant may answer or demur as in other civil actions. The pleadings and proceedings being the same as in civil cases, except as otherwise specially provided by the Act, and no reason founded on the policy of the law being perceived why this form of action should be excepted from the general rule established by the statute of 1857, permitting tenants in common to sue jointly or severally, our conclusion is that it is a civil action within the true intent of that statute, and consequently the twelfth instruction was properly refused.

No`r did the Court err in refusing the thirteenth and four-
teenth instructions requested by the defendants. Notwith-
standing the lease to Christy, he may not have had the
actual possession, which may have remained in the plaintiff
notwithstanding the lease. The fifteenth was also properly
refused. The fact that the plaintiff, at the commencement
of the action, was in the possession of a portion of the de-
manded premises clearly is no reason why he should not
recover the remainder. The sixteenth was not warranted
by the evidence. The land lies in a compact body, was in-
closed and held as such; and though there were nominally
streets through it, they have never been opened, used, or
dedicated as such, as far as the proof shows.

Judgment reversed and cause remanded for a new trial.

By WALLACE, J., dissenting:

The plaintiff had the *actual* possession of the premises up
to the night of the eighteenth, or rather the morning of the
nineteenth of November, about three o'clock A. M., when
the defendants, with some fifteen or more men, armed with
guns and pistols, wrested it from him by force. He there-
upon instituted this action of forcible entry and detainer, in
which, after a jury trial of some ten days' duration, he re-
covered a judgment of restitution. Of course the defend-
ants had the right to prove, if they could, that the posses-
sion of the plaintiff, which they had invaded, was not *at the
time* a peaceable possession; for the statute under which the
action was brought requires that the plaintiff should estab-
lish a possession, both peaceable and actual. It appears that
the plaintiff had had the actual possession for more than one
whole month next before the defendants entered; and the
latter, in order to show it to have been scrambling and not
peaceable in its character, offered to prove that they them-
selves had, "about a month before the entry complained

Opinion of Wallace, J., dissenting.

of," made an unsuccessful attempt to enter, and had been "debarred from entering by a cannon pointed and a match lighted." Supposing that it was competent for the defendants to rely upon their own menacing demonstrations previously made against the otherwise peaceable possession of the plaintiff, as having disquieted that possession, I am of opinion that this mere attempt to enter, which they sought to establish, unaccompanied by any other matter subsequently occurring, was too remote as affecting the character of the plaintiff's possession at the time they subsequently succeeded in making their entry. It was " about a month " before—perhaps from thirty to forty days before. So far as appears by the record, the plaintiff was not disturbed during this time in any wise. The Court below seems to have been of opinion that it was too remote for the purpose for which it was offered, and therefore excluded it; and I am unable to see that in doing so he committed an error of law or disregarded any rule of evidence which is so settled or defined as to require a reversal of the judgment at our hands.

The proffered evidence, if either admitted or rejected, is not of sufficient significance to affect the merits of the question; for, even if admitted, I do not suppose that an intelligent jury would have regarded it as characterizing the possession of the plaintiff as existing a month or more later.

I am, therefore, of opinion that the judgment should be affirmed.

[NOTE.—The foregoing opinion was delivered at the July Term, 1870, but for some reason was not reported. It is referred to as authority in the case of *Conroy* v. *Duane*, decided at the April Term,.1873.—REPORTER.]