## JOHN BROOKS, APPELLANT, *v.* ELIHU WARREN, RESPONDENT.

FORCIBLE ENTRY AND DETAINER.—Under sections 1033 and 1046 Code Civil Proc. if the entry upon real estate was forcible and disseisee peaceably in the actual possession at the time of the forcible entry, the right to recover is complete.

ID.—SCRAMBLING POSSESSION.—Where evidence showed that respondent had for a long time prior to appellant's entry been in the possession of certain lands, and that appellant took possession in his absence under circumstances indicating that some one was in possession, and the re-entry of respondent was not forcible and not violent, although he used rough and vulgar language, *held*, that possession of appellant was a mere scrambling possession and not peaceable and actual and that he could not recover.

APPEAL from a judgment of the district court of the first district. The opinion states the facts.

*Messrs. Sheeks & Rawlins*, for appellant.

*Mr. James N. Kimball* and *Mr. A. R. Heywood*, for respondent.

BOREMAN, J.:

This is an action of forcible entry and detainer, instituted before a justice of the peace, where judgment was rendered for the plaintiff, (appellant,) and thence the case was appealed by the defendant (respondent) to the district court. In the district court the alleged unlawful detainer was waived, no evidence being introduced in support of it. The hearing was before the court, a jury having been waived. The judgment being given for the defendant, the plaintiff appealed therefrom to this court.

The statute governing this class of cases is as follows: "Every person is guilty of a forcible entry who either, (1) by breaking open doors, windows, or other parts of a house, or by any kind of violence or circumstances of terror, enters upon or into any real property; or (2) who, after entering peaceably upon real property, turns out by force, threats, or menacing conduct, the party in possession." Code Civil Proc., sec. 1033; Laws Utah 1884, p. 334. Upon the trial in such cases, the "plaintiff shall only be required to show, in addition to the forcible entry,  *  *  *  that he was peaceably in the actual possession at the time of the forcible entry." Code Civil Proc., sec. 1046; Laws Utah 1884, p. 338.

The questions for our consideration, therefore, are whether the entry was forcible, and whether appellant was at that time "peaceably in the actual possession." If both of these appear, he is entitled to a recovery; but it is otherwise if he fail in either.

The findings of the court are against the appellant on both of these points; and the findings of the court, like the verdict of a jury, will not be disturbed by the appellate court unless the preponderance of the evidence against the findings is so apparent and marked that the court can have no hesitancy in declaring that the particular findings under review are against the evidence: *Walker* v. *Popper*, 2 Utah, 281; *Dewey* v. *Snyder*, Id. 244; *Harrington* v. *Chambers*, 3 Utah, 94, 1 Pac. Rep. 362; *Chamberlain* v. *Raymond*, 3 Utah, 117; *Trenor* v. *Central Pac. R. Co.*, 50 Cal. 230.

The evidence in the case is quite meager, and all of it came from the witnesses for the appellant; the respondent introducing no evidence except upon the question of restoring defendant to the possession. The evidence in regard to the possession of the house and premises at and prior to the time that appellant, Brooks, came there, is substantially as follows: The Promontory Stock Company was the party for and under whom appellant was acting and Adams and Schilling were the parties for and under whom respondent was acting. John W. Taylor, one of the Promontory Stock Company, testified that his judgment was that Adams and Schilling have had their cattle on that *land for over a year;* that he knew Warren, and had heard that he was foreman for Adams and Schilling; that Adams told him that they owned the cabin, and used it. He also testified that Warren was "simply a squatter." He said, further, that about the house there was no inclosure, but there was a fence around the stacks and the *corral* at the sheds; that there was a fence running down from the mountain, nearly to the lake, a distance of 100 or 150 rods; that some distance north of the house there was a gate, and there was a *corral* adjoining the sheds; that hay was stacked at the north and west of the house; that on the south side, next the house, there was a fence, and there was a fence running to the mountains, so steep that cattle cannot cross it, and it would shut off all cattle south of the promontory, and it encloses land; that no one lived in the house when he went there with Brooks, the house being unoccupied, and the gate and door were open, and he drove in and up to the house. He saw a box and some loose hay in the house. He had been there twice before that time—once in October, 1885, when the house was unoccupied, and the gate and door open; and again in March, 1886, when he saw two little girls there. John Dean, witness for appellant, testified that Warren claimed the house, and that he had built it, and said something about its being unfair for others to go in the house; and, from what Warren said at that time, he was led to believe that he had the best right to the premises; that he took Brooks down there when he went into possession, the

first of September, and they found in the house a milk-pan, a bake-oven, and some baled hay, and there was a fence around the stack, and quite a quantity of hay fenced in; and there was a kind of shed, too. He said that Warren claimed to have built the house, and claimed the hay in the house; that he had known Warren always, and that Warren had been attending to Adams and Schilling's stock for a few years, at Promontory.

This, then, was the condition of the property when Taylor, Dean, and Brooks went there, and Brooks was put into possession by Taylor. The object of placing Brooks in possession was to hold it for the Promontory Stock Company, and Dean was sent there to help him hold possession. The house was not occupied by any one being in it—no person was there, but there was some personal property in the house, and outside of it there were *corrals*, shed, hay-stacks, and a large amount of fences. The only witness testifying to have visited the premises prior to the time that Brooks was put into possession stated that he saw children there on the latter of his only two visits, and that in his judgment Adams and Schilling had occupied the place for over a year. Warren was in the employ of Adams and Schilling. From all these facts, it must have been apparent to appellant and his employees. as well as to the world, that those premises were at that time in the possession of somebody, even though no one was personally present when they went there. The personal presence of the party having the possession was not necessary. His possession was manifested by his having built a house and *corrals*, sheds, fences, and putting up hay-stacks, and leaving some personal property in the house during his absence, and by his having used the property for a long time: *De Graw* v. *Prior*, 53 Mo., 316; *Shelby* v. *Houston*, 38 Cal., 422; *Gray* v. *Collins*, 42 Cal., 152; *Allen* v. *Tobias*, 77 Ill., 169.

The appellant and his employees acted as if they anticipated trouble. But why should they have anticipated trouble? Yet that they did anticipate it is apparent. Three of them went there to put Brooks into possession. Taylor testified that, when he put Brooks into the posses-

sion, he said to Brooks: "This land is ours. We have bought and paid for it. I want you to hold it against all persons who may come to take it. Don't use any violence, but hold it for us. Don't leave it unless you are forced to go." Dean was sent there again on the ninth of September.

From the foregoing facts, we think that the district court was authorized to find that Warren, and those whose interest he represents, had been in the possession for a long time, and were so when appellant took possession, on the first of September, and that the entry of plaintiff was tortious. The possession of Brooks was wrongful, and not in good faith. He knew it was contested, and that there would likely be trouble over it. It was a scrambling possession, and not such a peaceable possession as to enable the party thus entering to maintain an action of forcible entry against the person who had been thus dispossessed: *Bowers* v. *Cherokee Bob*, 45 Cal., 495; *Conroy* v. *Duane*, Id., 597; *Gray* v. *Collins*, 42 Cal., 152; *Hoag* v. *Pierce*, 28 Cal., 187; *Wray* v. *Taylor*, 56 Ala., 188.

The re-entry of the former possessor was not forcible. Warren had been in possession for a long while. He had built a house, put up fences, *corrals*, a shed, and hay-stacks. He was seen there twice by Brooks, while we was there. He was working about the stacks, and was at the house. During Brooks' temporary absence, and while Dean was there, Warren entered the house by consent of Dean, and then ordered Dean to leave, and Dean left. He used vulgar and rough language in talking to Dean, but used no force, and did nothing that put Dean in fear of force, nor that was calculated to do so. Dean left because as he says, he did not want to have Warren as his enemy, or to think that he was acting for meanness; that they had always been good friends, and he did not want to have any hard feelings: *Thompson* v. *Smith*, 28 Cal., 527; *Wood* v. *Phillips*, 43 N. Y., 152; *Berry* v. *Williams*, 21 N. J. Law, 423.

We see nothing in the case to justify a reversal of the judgment. It seems to have been but another instance,

so often resorted to, of taking the law into one's own hands, and, after meeting defeat, to turn to the law for help. The law cannot help in such cases. The purpose of the tortious proceedings of appellant and his employees is made manifest by the testimony of Taylor, who said that "there is a point about the possession of this house that would explain something. Near the house, within 40 or 50 feet, is a spring which is very valuable. *That spring controls thousands of acres of land. It is cattle land.*" Taylor was apparently the head of a stock company, and appellant was his employee.

For the reasons above stated, the judgment of the district court is affirmed, with costs.

ZANE, C. J., and HENDERSON, J., concurred.