## MILLIGAN, RESPONDENT, *v.* CUFF, APPELLANT.

[Submitted October 25, 1893. Decided April 23, 1894.]

FORCIBLE ENTRY AND UNLAWFUL DETAINER—*Plaintiff must have peaceable pos-
session.*—The lessor of a lot upon which the lessee had erected a building
under a lease providing that all improvements put upon the premises should
become forfeited upon default in payment of rent for sixty days, cannot, after
refusing a tender of two months' rent, upon the express ground that rent
for three months was due, maintain an action for forcible entry against the
defendant to whom the lease had been transferred, where it appeared that
immediately after refusing the two months' rent he had placed two men within
the building during the temporary absence of the defendant who had occupied
the house during the preceding night and that day until one o'clock, when he
went out for dinner, and who upon returning had forced his way into the
house and turned out the men, since the plaintiff had acquired no peaceable
possession at the time of defendant's entry; and had the two months' rent been
accepted there would have been no sixty days' default under which a forfeiture
of the building could have been declared.

SAME—*Possession by plaintiff.*—The mere fact that lessor of premises had given
permission to the lessee's mortgagee to remove some furniture from an upper
story and store it in a lower room, after such permission had been refused by
the lessee's agent, does not establish such a possession as to enable the lessor
to maintain an action for forcible entry.

*Appeal from Third Judicial District, Deer Lodge County.*

ACTION for forcible entry and unlawful detainer. The
cause was tried before DURFEE, J. Plaintiff had judgment
below. Reversed.

*Brazelton & Scharnikow,·* for Appellant.

The evidence conclusively shows that the defendant, or his
agents, were in constant possession of the property, although
frequently absent for a short time. That during such absence
George Plaisted went upon the premises. That upon his
return the defendant again took possession, without force.

Defendant entered in good faith and under claim of title as lessee, and therefore could not be guilty of unlawful detainer. (*Conroy* v. *Duane*, 45 Cal. 597; *Powell* v. *Lane*, 45 Cal. 677; *Shelby* v. *Houston*, 38 Cal. 422.) No other evidence of possession on the part of plaintiff was produced than that George Plaisted went upon the property in controversy for a short time, during the temporary absence of the defendant or his agents. This was a wrongful entry on his part, and is not such a possession as will maintain an action of this character. (*Mason* v. *Hawes*, 52 Conn. 12; 52 Am. Rep. 552; *Harrington* v. *Scott*, 1 Mich. 17; *Mitchell* v. *Carder*, 21 W. Va. 277.) No evidence of any character is produced by the plaintiff that any demand whatever was made for rent, or a notice of forfeiture served on defendant. This is necessary before a recovery can be had. (2 Woodfall on Landlord and Tenant, § 449; 8 Am. & Eng. Ency. of Law, 140; *Johnston* v. *Hargrove*, 81 Va. 118; *Cone* v. *Woodward*, 65 Ill. 477.) No attempt whatever is made to show that a demand for possession was made as required by statute, to recover possession from a tenant for covenant broken. A failure to make this demand is an absolute bar to this action. (Code Civ. Proc., § 727, Comp. Stats.; *Martin* v. *Splivalo*, 56 Cal. 128; *King* v. *Connolly*, 51 Cal. 183; *McDevitt* v. *Lambert*, 80 Ala. 536; *McLean* v. *Spratt*, 19 Fla. 97.) The court, in giving instructions for plaintiff, erred in holding that the only issue was the fact whether or not on March 12, 1890, the plaintiff or agent was in the possession, and the defendant took possession forcibly. The plaintiff having admitted the execution of the lease, and failed to prove its forfeiture, the possession of plaintiff would, of itself, be wrongful, and not the issue to be presented to the jury, as they so were in said instructions, unless the demand for rent and possession or declaration of forfeiture was also made, and found by the jury. (*Nason* v. *Best*, 17 Kan. 408; *Hyde* v. *Goldsby*, 25 Mo. App. 29; *Lichty* v. *Clark*, 10 Neb. 472; *Dutton* v. *Colby*, 35 Me. 505; *Williamson* v. *Paxton*, 18 Gratt. 475.)

*Durfee & Brown*, for Respondent.

The act of forcible entry and detainer is a summary proceeding to recover possession of premises forcibly or unlawfully

detained. The inquiry in such cases is confined to the actual, peaceable possession of the plaintiff in the original complaint and the unlawful or forcible ouster or detention by the defendant—the object of the law being to prevent the disturbance of the public peace by the forcible assertion of a private right. Questions of title or right of possession cannot arise; a forcible entry upon the actual possession of the plaintiff being proven, he would be entitled to restitution, though the fee-simple title and present right of possession are shown to be in the defendant. The authorities on this point are numerous and uniform. (*Parks* v. *Barkley*, 1 Mont. 514; *Boardman* v. *Thompson*, 3 Mont. 387; *Sheehy* v. *Flaherty*, 8 Mont. 365; *Voll* v. *Hollis*, 60 Cal. 570; *Holland* v. *Green*, 62 Cal. 67; *Gidding* v. *'76 Land and Water Co.*, 83 Cal. 100.) The testimony shows that the plaintiff by her agent, George Plaisted, was in actual and peaceable possession of the property in controversy from February 26th or 28th, 1890, to March 12th, 1890, and had let a portion of the house to other persons for storage purposes. The testimony further shows that the property had been vacant and abandoned several months prior to the taking possession of it by the plaintiff; that the manner of obtaining possession of the property was peaceable; that the plaintiff was ousted from possession, and the property detained by force and violence. The law requires no one to do a vain thing; the property in controversy was abandoned and the whereabouts of the defendant or his grantor unknown; the plaintiff, through her agent, used every diligence to collect the rent due, without success; the defendant and his grantor had forfeited all right of possession they ever had, by nonpayment of rent and abandonment. As to whether the plaintiff demanded rent, or declared a forfeiture, is immaterial, if her possession was actual and peaceable and her ouster violent and forcible. The law is fixed on this point, and the cases already cited on this subject are conclusive. Had the possession of the plaintiff been scrambling, or other than open, peaceable, and notorious, the jury under the instructions given for both the plaintiff and defendant had ample warrant to so find and give the defendant their verdict.

Per CURIAM.—By this action, plaintiff seeks judgment for restitution of possession of a certain lot and building thereon situate in Phillipsburgh, Deer Lodge county, whereof plaintiff, by her complaint, avers that she was on the 12th of March, 1890, the owner and in peaceable possession; that defendant, then and there, contrary to the statute in such cases made and provided, entered into said premises, and with strong hand took possession thereof, and ever since has wrongfully withheld possession, to plaintiff's damage in the sum of one hundred dollars. Wherefore, plaintiff demands judgment for restitution of said premises, and damages, in the sum of one hundred dollars, for wrongfully entering and withholding possession thereof. Defendant, on his part, pleads not guilty of the alleged forcible entry or unlawful detainer, and denies that plaintiff is entitled to any damage by reason of defendant's occupation of said premises.

Plaintiff prevailed on the trial, recovering judgment for restitution of possession of said premises, and for damages greatly exceeding the amount alleged or demanded in the complaint, to wit, seven hundred and thirty-three dollars.

Defendant's motion for new trial specifies error in certain instructions to the jury, and that the evidence is insufficient to support the verdict; and, his motion for new trial having been overruled, he appeals from that order, insisting that his specifications are well founded, as shown by the record.

After the action was instituted plaintiff died, and the present plaintiff was substituted as her administrator.

The evidence shows that one Morris leased said lot about August 7, 1889, for the period of three years, conditioned, as shown by the lease introduced in evidence, that the lessee (Morris) should have the possession and use of said premises for three years from that date, for which he agreed to pay the sum of twenty-five dollars per month rent, payable monthly in advance, and that default of such payment for sixty days should subject the leasehold, and all improvements put upon said premises by the lessee, to forfeiture; that, pursuant to such lease, Morris took possession, and erected on said lot a two-story frame building 24 x 85 feet in dimensions, at a cost of about two thousand five hundred dollars, arranging the lower

story for the purpose of conducting a saloon business therein, and furnishing the same with certain fixtures for the purpose of carrying on such business; that the upper story of said building was arranged in rooms, carpeted and furnished, for lodging purposes.  That Morris did not engage in a saloon business in said building, as was intended by him when he erected the same, for the reason, as he asserts in his testimony, that the opportunity for such business was then unpromising. But it appears the upper rooms were used for lodging purposes by Morris, as far as he could find tenants therefor, during a short period after the building was completed and furnished; his wife the while having charge and taking care of the lodging department of said house; that Morris, finding it necessary, on account of the quiet state of business at Phillipsburgh, to go elsewhere to seek employment, about October 2, 1889, removed to Anaconda, where he found employment, and brought his wife and family there shortly afterwards, leaving said premises, with the furniture and fixtures therein, in charge of defendant, Cuff, to whom, according to the testimony of defendant and Morris, the leasehold and improvements on said lot had been sold and conveyed by Morris.   Afterwards, Morris sent from Anaconda to·plaintiff fifty-one dollars in payment of the rent, which, as all parties agree, paid the rent up to December 15th of that year.   Defendant Cuff, appears to have assumed control over said premises after the departure of Morris, but was absent therefrom most of the time during said winter.   He claims to have left the premises in charge of Charles McDermott, to take care of the building, and rent the rooms in the upper story, in his absence.   McDermott testifies that he did the same in the absence of Cuff, and collected some rents from lodgers in said rooms, and this is not disputed. During all this time  plaintiff, lessor of said premises, and her husband, George Plaisted, who acted as her agent in respect to said lease and premises, resided a short distance therefrom; and George Plaisted testifies, on behalf of plaintiff, that during said winter the building on said lot was not occupied, with the exception of the occasional occupation of some of the rooms by lodgers; that during said winter he frequently passed by said

building, and on one occasion closed and put a prop against the door thereof.

The event which plaintiff claims amounted to a forcible entry and unlawful taking of possession of said premises by defendant occurred about March 12, 1890 (the particular date being immaterial, except that these events happened prior to March 15th, which all agree). At that time there were three months' rent due. That according to the testimony of all the parties, about that date Morris and Cuff visited George Plaisted, plaintiff's agent, at the residence of the latter, and offered to pay two months' rent, but Plaisted declined to take such payment. In speaking of this interview, in his testimony on behalf of plaintiff, Plaisted says: "I wanted full rent. I wouldn't take two months' rent, as they offered." And, according to his testimony, that is the only reason he asserted for declining the payment of two months' rent offered by defendant. Immediately after this interview, as shown by the testimony, Plaisted called to his aid Simmons and Sherman, whom he brought to said house, and directed them to stay there, and hold possession thereof while he (Plaisted) would go down town, as he said, and procure a lock, and return. As Plaisted started on such errand, when but a short distance from said house, he met defendant apparently going to the house. Thereupon Plaisted turned and followed defendant. Defendant, on reaching said house, attempted to open the door and enter; but, finding the latch fastened, he climbed into the house through a large opening in the door, where the glass formerly therein had been broken out. While so doing, Simmons tried to prevent defendant from entering; but failing, defendant came in, and said to Simmons, "Now, you go out." Whereupon Simmons went out, as all the witnesses agree. On the part of plaintiff, however, the witnesses assert that, when defendant ordered Simmons out, he took hold of his shoulder, and pushed him. This defendant denies. It also appears that about the same time defendant ordered Sherman out, and he went out, also. While these events were transpiring plaintiff's agent, George Plaisted, was just outside of the building. Thereafter defendant continued in possession, and this action was immediately instituted in the justice's court of that township,

founded entirely upon the proposition that, when the episode just described occurred, plaintiff was in the peaceable possession of said premises, and that said acts of defendant, Cuff, amounted to a forcible entry and unlawful detainer thereof.

The decision of the case must turn upon the question as to which of these two contending parties had actual possession, in contemplation of law, at the time defendant entered, and ordered Simmons and Sherman out of said house. The evidence introduced on behalf of defendant, and not disputed, is to the effect that both Morris and defendant had occupied and slept in said building during the previous night, and were in possession thereof during that morning; that there were fixtures and furniture in said building belonging to either Morris or defendant, Cuff, the evidence not being clear which of them owned the fixtures and furniture remaining therein; that, as before stated, Cuff had that morning offered Plaisted payment of two months' rent due on said lease; that, when Plaisted declined to receive such payment, he did so on the express ground that he wanted all the rent paid, with no intimation that he had assumed possession of said premises, or intended to insist on a forfeiture of the leasehold and improvements because the rent was in arrears. His expressions to defendant, as related in his own testimony, fairly implied that the payment of the rent in full would be satisfactory to plaintiff. It is to be borne in mind, too, that had Plaisted received the two months' rent, as offered, on that occasion there would have remained only one month's rent in arrears at that time, and for such arrears the leasehold and improvements would not have been subject to forfeiture. Nor was plaintiff or her agent, Plaisted, actually in possession at the time he declined to receive the payment offered; but, according to the evidence disclosed by this record, defendant was in possession, actually occupying said premises. Defendant testifies that he not only slept in said house the night previous, but was there during that day until about one o'clock, when he went down town to a restaurant for his dinner, and was returning therefrom when he met Plaisted, and on going to the house found Simmons and Sherman therein, and ordered them out as aforesaid. His testimony stands uncontradicted. According to the testimony disclosed

by the record, without conflict, plaintiff had acquired no actual peaceable possession when the event took place on which he asserts that defendant made a forcible entry into said premises. At most plaintiff attempted to gain possession of said premises and failed. We do not think plaintiff even succeeded in getting what might be termed "scrambling possession." (*Bowers* v. *Cherokee Bob,* 45 Cal. 502, and cases cited; *Voll* v. *Butler,* 49 Cal. 74.) The inference to be gathered from the facts shown by the record is that plaintiff proposed and sought to assume possession of said premises, and forfeit to her use and benefit the improvements thereon, of the value of over two thousand dollars, for three months' rent, at twenty-five dollars per month, then in arrears. Without notice or intimation to the lessee of such purpose plaintiff attempted to take possession of said premises, but failed to establish peaceable possession, for she was repulsed in the attempt. Instead of being the one against whom a forcible entry was made, plaintiff herself, through her agent, was attempting to make an unlawful entry and failed. As before observed, had plaintiff received the two months' rent offered there would have been only thirty days' rent then in arrears, and consequently the leasehold and improvements would not have been subject to forfeiture, under the terms of the lease. But, while these environing circumstances may have a bearing explanatory of the acts and intentions of the parties they relate more directly to the right of possession, which is not under consideration in this case. The decision turns upon the question as to who was in actual possession when the event occurred on which plaintiff founds this action.

Plaintiff appears to rely to some extent on the fact that prior to her attempt to take possession of said premises, as aforesaid, she had given permission to Evans & Co. to store some furniture in the lower room of said building. The facts on this point, as disclosed by the record, show that Evans & Co. held a chattel mortgage on certain furniture in the upper rooms of said building, and, on taking possession thereof to foreclose the mortgage, they applied to McDermott, who, according to the testimony on behalf of defendant, was in charge of said building for a time, as a representative of

defendant, Cuff, for permission to take said goods from the upper story, and store the same a short time in the lower room; that McDermott declined to give any such permission, whereupon Evans & Co. applied to Plaisted for like permission in respect to said goods, and, according to Plaisted's testimony, he granted the same, and said goods were transferred from the upper to the lower story of said building, and remained there, in the care of Evans & Co. a short time, until sold in foreclosure of said mortgage. It does not appear that plaintiff had any interest in said goods whatever. The same appear to have been the property of Morris, subject to the lien of Evans & Co. thereon; and the mere permission which plaintiff asserts he gave to Evans & Co. to move said goods from one part of said building to another does not, under the circumstances, have any weight in determining the main question in this case.

The impression gained on the argument of this case was that the facts supported plaintiff's recovery, but, on a thorough consideration of the facts presented by the record, we find the evidence entirely insufficient to sustain the finding that defendant made the forcible entry or unlawful detainer charged in the complaint. Moreover, the damages awarded greatly exceed the amount warranted under the allegations of the complaint.

The instruction by the court to the jury which excluded from its consideration the acts of McDermott, as representative of Cuff, as shown in evidence, on the ground that Cuff, as representative of Morris in said lease, could not delegate his authority to McDermott, was inconsistent with the charge to the jury to consider the acts of Simmons and Sherman in attempting to take and hold possession of said premises at the instance of plaintiff's agent, Plaisted, as acts authorized by plaintiff, and done in her behalf; the court thus assuming and charging the jury that Plaisted, as agent of plaintiff, could delegate his authority to act in aid and benefit of plaintiff in reference to said premises, but that a representative of Morris, in charge of said building, could do no such thing. This instruction, in effect, lays down one rule of law to govern

plaintiff's side of the case, and a contrary rule to govern the defendant, under similar conditions.

Judgment and order denying new trial reversed, and the cause remanded, with directions to grant defendant's motion for new trial.

· *Reversed.*

All concur.