Pearson, J.
 

 ¥e are told by the Attorney General that this was treated as an indictment at common law, for the purpose of giving the State the benefit of the testimony of Hin-son, who was not a competent witness in a proceeding under the statute. The question is, has the state made out a case indictable at common law ? The indictment is strong enough, but the, evidence does not sustain the allegations. The case made upon the facts is this: Hinson sold and conveyed the land to Ross, but remained on it under an alleged parol agreement, “ that he was to remain there for ten years.” Ross, in company with four others, went to the land, taking with him a wagon loaded with provisions, and some household furniture, for the purpose of taking possession. Hinson was present and forbade them to enter, but they did enter against his will, and began to erect a house outside of the enclosure where Hinson’s house was situated, and some of them continued there for several weeks. His Honor was of opinion that these facts made out an offence indictable at common law. "We do not think so.
 

 To make a trespass indictable, it must be committed
 
 manu forti,
 
 in a manner which amounts to a breach of the peace ; or, according to some of the cases, which would necessarily lead to a breach of the peace, if the person in possession is
 
 *317
 
 not overawed by a display of force, so as to be induced to surrender and give up the possession, because resistance would be useless. Unless this degree of force is resorted to, the trespass is a mere civil injury, to be redressed by action.
 

 The courts should keep a steady eye to this distinction, because individuals are under great temptation to convert civil injuries into public wrongs, for the sake of becoming witnesses in their own cases, and of
 
 saving costs.
 

 We can see nothing in this matter, even as told by Hinson himself, that can magnify it into an indictable trespass. There was no breach of the peace — no display of arms or “ multitude of people” — nothing of “ the pomp and circumstance of war” calculated to frighten a man of ordinary firmness. Hinson was not expelled and put. out of possession. His dwelling-house was not invaded, and his enclosure was unmolested. It was, at most, a mere civil trespass.
 

 We do not feel at liberty to take into consideration the fact, that according to the evidence, Eoss was the owner of the land, and had a
 
 right of entry
 
 — the alleged parol lease for ten years being void, and Hinson being in effect a mere tenant at sufferance, because we find it an unsettled question, whether one who has a right of entry may not use force, if necessary to assert his right, according to the common law. It is not necessary for us to enter upon this debateable ground in order to dispose of this case. 1 Hawk. Pl. Cr. ch. 28, (page 495). “ It seems that at common law, a man disseised of any land (if he could not prevail by fair means) might lawfully regain the possession thereof by force.” “ But this indulgence of the common law, in suffering persons to regain the lands they were unlawfully deprived of, having been found by experience, to be very prejudicial'to the public peace, it was thought necessary, by many severe laws, to restrain all pei’sons from the use of such violent methods of doing them•selves justice.”
 

 Blackstone, whose book on criminal law is of the highest authority, follows Hawkins, 4 vol. 148.
 
 11
 
 An eighth offence against the publiepeaee isthAtof aforceable entry and detainer,
 
 *318
 
 which is committed by violently taking, or keeping possession of lands, with menaces, force and arms, and without the authority of law. This was formerly allowable to every person disseised, or turned out of possession, unless his entry was taken away, or barred.” “ But this being found very prejucial to the public peace, it was thought necessary, by several statutes, to restrain all persons from the use of such violent methods, even of doing themselves justice, and much more if they had no justice in their claim.”
 

 In
 
 King
 
 v.
 
 Wilson,
 
 8 Term. Rep. 357, the correctness of this view of the common law is questioned in the remarks which fell from the Judges in delivering their opinions. But on a subsequent day of the term they felt called on to explain, and Lord KenyoN says, “perhaps some doubt may hereafter arise respecting what Hr. Serjeant Hawkins says : “that at common law the party may enter with force into that to which he has a legal title; but without giving any opinion concerning that dictum one way or the other, but leaving it to be proved, or disproved, whenever that question shall arise, all we wish to say is, that our opinion, in this case, leaves that question untouched ; it appearing by this indictment that the defendants
 
 vmlawfull/y
 
 entered, and, therefore, the Court cannot intend that they had any title.” That was upon a demurrer.
 

 So, in the
 
 State
 
 v. Whitfield, 8 Ire. Rep. 315, the Court throws a doubt upon the view of the common law, as laid down by Hawkins and Blackstone, and reference is made to “Wilson’s case.” But the matter was. before the Court upon a motion in arrest of judgment, and, as was done in Wilson’s case, the point is left undecided. Perhaps it will be found that the authorities may be reconciled on this distinction: One having a right of entry, may, at common law, use force, provided it does not amount to an actual
 
 breach of the peace ;
 
 whereas one, not having a right of entry, is guilty of a trespass, indictable at common law, if he enters with a strong hand, under circumstances calculated to excite terror, although the
 
 *319
 
 force used does not amount to a breach of tbe peace. This, however, is merely a suggestion. '
 
 Venire de novo.
 

 Per CueiaM. Judgment reversed.