[No. 8285. In Bank. — May 24, 1886.]

## JOSE RAMON CASTRO, RESPONDENT, *v.* EMILY S. TEWKSBURY ET AL., APPELLANTS.

FORCIBLE ENTRY — ACTION FOR — WHAT PLAINTIFF MUST SHOW. — In order to maintain an action of forcible entry, the plaintiff must show that he was in the actual and peaceable possession of the property entered upon; that the defendant, by some kind of violence or circumstance of terror, entered into or upon the property, and so turned the plaintiff out and took and held possession of it himself; or that after making a peaceable entry the defendant, by force, threats, or menacing conduct, turned the plaintiff out and took the possession.

ID. — DOES NOT LIE FOR MERE TRESPASS. — An action of forcible entry does not lie for a mere trespass on land.

ID. — EVIDENCE — POSSESSION. — The evidence reviewed, and *held* not to show a forcible entry by the defendants, or such an actual and peaceable possession in the plaintiff as was necessary to enable him to maintain the action.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial.

The facts are stated in the opinion.

*William & George Leviston,* and *B. S. Brooks,* for Appellants.

*W. S. Tinning, J. C. Martin,* and *A. M. Rosborough,* for Respondent.

· BELCHER, C. C.—This is an action of forcible entry. The premises involved are situated in Contra Costa County, and consist of a hundred acres of land, with a dwelling-house thereon.

The plaintiff recovered a verdict for restitution of possession and damages in the sum of seven hundred dollars, which were trebled in the judgment.

The defendant moved for a new trial, which was denied, and then appealed from the judgment and order.

Two questions only need be considered:—

1. The alleged entry, whatever may have been its character, was made on the ninth day of June, 1880, and was into the dwelling-house, and not upon any other part of the premises. Did the plaintiff at the time of the entry have such possession of the house as was necessary to enable him to maintain an action of this character?

In this state, in order to maintain an action of forcible entry, the plaintiff must show:—

1. That he was in the actual and peaceable possession of the property entered upon;

2. That the defendant, by some kind of violence or circumstance of terror, entered into or upon the property, and so turned the plaintiff out and took and held possession of it himself; or,

3. That after making a peaceable entry the defendant, by force, threats, or menacing conduct, turned the plaintiff out and took the possession. (Code Civ. Proc., secs. 1159, 1172.)

Speaking of what was a sufficient possession to main-

tain the action, this court said in *Hoag* v. *Pierce*, 28 Cal. 187:—

"If the possession of the plaintiff was not actual and of sufficiently long standing to become to a legal intent peaceable, then he was not in a condition to maintain his action." In *Treat* v. *Stuart*, 5 Cal. 113, the court said: "The plaintiff in an action of forcible entry and unlawful detainer must show an actual, peaceable possession in himself at the time of the entry"; and in *House* v. *Keiser*, 8 Cal. 500, which was an action brought under the act concerning forcible entries and unlawful detainers, the court said that "a party who desires to avail himself of the summary remedy provided by this act must bring himself clearly within its provisions. He must show a possession, actual, peaceable, and exclusive; a mere scrambling or interrupted possession, or the exercise of casual acts of ownership over the premises, is not sufficient."

And in that case it was held that one who in the morning entered upon a portion of a tract of land in the possession of another, and inclosed it with a fence and put a house on it before sundown, did not acquire such a peaceable possession as to enable him to maintain forcible entry and detainer against the possessor, who, at sundown of the same day, destroyed the house and fence and drove him away.

So in *Voll* v. *Butler*, 49 Cal. 74, it was held that an action of forcible entry and detainer cannot be maintained upon a scrambling possession.

As between two parties struggling for possession, neither can maintain an action of forcible entry and detainer against the other until he has acquired an actual possession which has ripened into a peaceable occupation.

Here it clearly appears from the record that the defendant Emily S. Tewksbury claimed, and had claimed for several years, that the whole property was the property

of the estate of her deceased husband, of which she was the executrix; that one Alberto, with his family, had occupied the dwelling-house, with about an acre of land surrounding it, by permission of Mrs. Tewksbury, since 1877, and that a few days before the 9th of June he notified her that he was going to leave because Castro was troubling him, and that he wished her to send some one to take possession; that she requested him to remain till the 9th, when she would send some one, and he did so; that between seven and eight o'clock on the morning of the 9th the plaintiff went to the house and asked Alberto if he was going to move, and being answered in the affirmative, said the house was his and he was going to put his things there.

According to the plaintiff's testimony, Alberto then told him: "He knew I was the owner of the place, and to take it, as he was going for a wagon. No one was present then except Moitozo." Moitozo contradicted the plaintiff. He certified that when the plaintiff said the house was his, "Alberto replied that if it was he did n't know it; that he got possession through Mrs. Tewksbury, and was going to give possession to her. He did not say that Castro could have the house, or anything to that effect." And this statement was confirmed by both Alberto and his wife.

The plaintiff then went away, but shortly after returned, bringing some articles of furniture, and followed by his wife and six daughters. They all went into the house, and remained in or about it, but did not interfere with Mrs. Alberto, who was engaged in her household work; nor with Alberto, who was there most of the time, getting his things ready to remove.

At about eleven o'clock in the forenoon the defendants Cashman and Rollins arrived at the house, being sent there by Mrs. Tewksbury to take possession for her. They found Castro outside, and Alberto, his wife and children, and some of the Castro children, inside. Al-

berto then formally turned over possession of the house to them for Mrs. Tewksbury, and began to move out his furniture. From that time until eight o'clock in the evening of the same day, Castro and his family and the men remained at the house. There was some wrangling, and according to the plaintiff's testimony, some demonstrations of violence toward him; but this was denied by the defendants. At eight o'clock in the evening a constable appeared at the house, and told Castro that he had a warrant issued by a justice of the peace at San Pablo, for the arrest of him and all his family. "Then I went in," the plaintiff says, "and told my family that we were arrested, and to go out; the constable said there was a wagon, but I said we would rather go on foot, and he said all right."

They then went to the office of the justice of the peace, the constable not accompanying them, and when arrived there were permitted to go away on their own recognizance. They then returned to their own house, and found the articles which had been carried to the Alberto house lying in front of it. The complaint on which the warrant was issued was for a forcible entry, and was written by the attorney of Mrs. Tewksbury, but without her knowledge, and it did not appear who signed or swore to it.

Castro never returned to the Alberto house, and he had no possession of it except as briefly above stated.

In our opinion, the testimony fell far short of showing such actual and peaceable possession of the house in the plaintiff as was necessary to enable him to maintain an action of forcible entry.

2. Was the plaintiff entitled to maintain an action for a forcible entry upon the hundred acres of land, and to recover as damages the value of the wheat and barley crops standing thereon?

As to this land, the record shows that it was the northern half of a tract of two hundred acres, which was in-

closed as one field many years before by the husband of
Mrs. Tewksbury, and was claimed by him during his
life, and afterward by her as the property of his estate.
Mrs. Tewksbury leased the whole tract to one Peter Davis,
and he occupied and cultivated it in 1879. He lived
on the southern half and cultivated that in 1880. He
plowed a part of the northern half in December, 1879,
but afterward Castro entered and replowed where Davis
had plowed, and also plowed the balance of the hundred
acres, and then sowed it with wheat and barley. Prior
to June 9th, Castro had cut for hay ten or fifteen acres
of the crop planted by him, and the hay was then lying
on the ground. Afterward he entered without interfer-
ence, and raked the hay and moved it away.

On the 12th of June, two actions were commenced in
the Superior Court against Peter Davis, one by the de-
fendant Emily S. Tewksbury, and the other by one L.
M. Tewksbury. In both actions attachments were
issued, and on the same day levied by the sheriff upon
the crop grown upon the hundred acres occupied by
Davis. On the 16th of the same month, by the direction
of the attorney for the plaintiffs, the sheriff levied the
attachment upon the crop still standing upon the land
in controversy. He then placed the defendant Martin
in charge of the crop as keeper, and employed the de-
fendant Green to cut and harvest it. By direction of
the sheriff, Green cut and baled the crop for hay, and the
sheriff, under an order of court, sold it at public auction
and paid the proceeds into court. When the crop was
removed, the sheriff and his employees left the land and
had nothing more to do with it. When Green first com-
menced to cut the crop, Mrs. Castro and some of her
daughters went out and objected to his cutting it, saying
it was their crop.

The above is the substance of all the testimony tend-
ing to show an entry, either forcible or otherwise, by any
of the defendants upon the land.

Does it show a forcible entry? We think not. At most it was a mere trespass, for which the plaintiff might have had an action against every one who instigated or authorized the wrong, as well as against those who actually participated in its commission.

But for a mere trespass the action of forcible entry does not lie. This is settled law in this state. In *Frazier* v. *Hanlon*, 5 Cal. 156, the court said: "Facts which might constitute a mere trespass upon property have never been held to sustain the action of forcible entry, or forcible and unlawful detainer. The offense being *quasi* criminal in its character, and force or menaces being necessary to constitute it, something more must be shown than a mere wrongful entry upon or wrongful detention of property to sustain an action under the statute regulating forcible entries and unlawful detainers." The court refers to *Williams* v. *Warren*, 17 Wend. 257, in which Judge Cowen, after reviewing the authorities, says: "The result seems to be that there must be something of personal violence, or a tendency to or threat of personal violence, unless the entry or detainer be riotous. In all cases there must be something beyond a mere trespass upon the property. . . . . A mere naked trespass to land or outhouses never yet was holden sufficient."

In *Merrill* v. *Forbes*, 23 Cal. 379, the defendant, Forbes, entered upon land in the possession of plaintiff, for the purpose of cutting and carrying away a crop of hay on it, and he cut and carried it away, and then left. When he went on the premises with his workmen and mowing-machine to cut the grass, the plaintiff was not at home, but his employee went and told them they must not cut the hay, and as soon as the plaintiff returned he went and forbade them, but Forbes replied that he was going to cut it. The court held this to be only a trespass, and not a forcible entry or detainer, and said: "The rules of law respecting the acts necessary to sustain an action for a forcible entry, or a forcible and unlawful detainer, re-

quire something more than a mere trespass upon the property. The entry of the defendants was evidently not for the purpose of taking possession of the land, but merely to cut and take away the grass growing thereon; and when this was completed, the defendants quit the premises entirely. Indeed, they do not appear to have resided on the land, even while they were at work. There is no conflict of evidence upon these points, and it is clear that the facts are entirely insufficient to maintain this kind of action." (See also *Polack* v. *McGrath*, 25 Cal. 55; *Janson* v. *Brooks*, 29 Cal. 214; *Hodgkins* v. *Jordan*, 29 Cal. 577.)

In our opinion, the evidence did not justify the verdict, and the court erred in refusing to grant the defendants' motion for a new trial.

It follows that the judgment and order should be reversed, and the cause remanded for a new trial.

SEARLS, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed and cause remanded for a new trial.