## LEWIS *et al. v.* THE STATE.

1. In order to constitute the offense of forcible entry, which section 338 of the Penal Code defines as "the violently taking possession of lands and tenements with menaces, force and arms, and without authority of law," the entry must be accompanied by some act of actual violence or terror directed towards the person in possession; and consequently, breaking and entering an unoccupied house in the absence of the person who had previously been in possession and control thereof, and who still claimed the right to the possession, is not indictable.

2. While the offenses of forcible entry and forcible detainer may be charged in one and the same count of an indictment, it is essential to a conviction thereon that both be proved.

Submitted October 8,—Decided October 19, 1896.

Accusation of forcible entry and detainer. Before Judge Norwood. City court of Savannah. July term, 1896.

*Gignilliat & Stubbs,* for plaintiff in error.    W. W. *Fraser, solicitor-general,* and *R. M. Hitch,* contra.

Lumpkin, Justice.

1.   The definition of "forcible entry" embraced in section 338 of our Penal Code is substantially the same as the definition of this offense at common law.   Every trespass upon the premises of another is, in a certain sense, forcible —that is, committed with "force and arms"; but it by no

means follows that every such trespass is indictable. In order to render a given entry "forcible" within the meaning of this word as used in the section cited, it would seem that it must be accompanied by some act of actual violence or terror directed towards the person in possession. This must have been the view entertained by this court when it had before it the case of *Blackwell* v. *The State*, 74 *Ga.* 816, in which it was held that the object of the statute in question "is to prevent personal altercation and strife between parties claiming possession, and there must be force or terror tending to a breach of the peace, at least, and enough to satisfy the jury of one or the other, in order to authorize a verdict of guilty. Menaces, as well as force and arms, to or upon the occupant of the premises, make the offense." Again, in the case of *Lissner* v. *The State*, 84 *Ga.* 669, it appeared that the accused forcibly entered the premises in dispute over the protest of the person in possession, and in such manner as was calculated to deter the latter from resisting the unlawful entry; and accordingly, it was held that: "To enter upon premises in defiance of the occupant, and with such a display of force as reasonably to deter him from maintaining his possession, is forcible entry." The decisions in these cases clearly indicate that the force, or show of force, and the entry thereby effected, which our law makes indictable, must be such as personally affect or disturb the occupant, rather than that force which is necessarily exerted against the premises invaded in accomplishing an unlawful entry, or trespass, thereupon. Such, we understand, was the nature of the unlawful violence which was an essential constituent of the offense at common law. Mr. Bishop declares that a forcible entry is one "made with an array of force adapted to create terror in those present opposing" it. 2 Bish. New Crim. Law, §489. Again, he says: "A mere unlawful or wrongful entry or detainer is not necessarily forcible within the law of this offense, but there must be such an act or acts as con-

stitute a breach of the peace, consisting either of an array of force threatening violence, or of actual violence, calculated to intimidate" (§504). "The act must in all cases exceed a mere trespass" (§505). We extract the following definition of forcible entry from Anderson's Law Dic. p. 404: "An entry made with violence, against the will of the lawful occupant, and without authority of law. Such entry as is made with a strong hand, with unusual weapons, an unusual number of servants or attendants, or with menace of life or limb; not a mere trespass." In 2 Taylor's Land. & Ten. §787, it is said: "To make an entry forcible, there must be such acts of violence used, or such threats, menaces, or gestures exhibited, as give reason to apprehend personal injury or danger in standing in defense of the possession." Many cases bearing on the question are collected in a note to this section, from which we extract the following: "To constitute a forcible entry or a forcible detainer it is not necessary that any one should be assaulted, but only that the entry or detainer should be with such numbers of persons and *show* of force as is calculated to deter the rightful owner from sending such persons away, and resuming his own possession;" citing Milner *v*. McClean, 2 C. & P. 17. To the same effect, see Pennsylvania *v*. Robison, Addison's Rep. (Pa.) 17. "A forcible entry must be with a strong hand, with unusual weapons, or with menace of life or limb; it must be accompanied with some circumstances of actual violence or terror; and an entry which has no other force than such as is implied by the law in every trespass, is not within" the English statutes bearing upon this subject. 1 Russ. on Cr. (6th ed.) 722, par. III. In Com. *v*. Dudley, 10 Mass. 403, it was held that in order to constitute forcible entry, "There must be some apparent violence, in deed or word, to the person of another, or some circumstances tending to excite terror in the owner, and to prevent him from claiming or maintaining his right."

From the above authorities it would seem that a mere invasion of the premises of another, during his absence, and accompanied with such violence only as was incident to effecting an entry into an unoccupied dwelling-house thereon, would be no more than a naked trespass, not indictable under the law declaring a "forcible entry" a criminal offence.     To the contrary, however, is the following extract taken from 1 Haw. P. C. ch. 28, sec. 26, p. 501: "It seems to be agreed that an entry may be said to be forcible, not only in respect of a violence actually done to the person of a man, as by beating him if he refuse to relinquish his possession, but also in respect of any other kind of violence in the manner of the entry, as by breaking open the doors of a house, whether any person be in it at the same time or not, especially if it be a dwelling-house." We find the substance of this extract in several of the modern text-books on the subject, most if not all of which cite Serjt. Hawkins as authority, who in turn relies solely upon Rex v. Bathurst as supporting his text.     That case, which may be found reported in Sayer's Rep. 225, does not, however, undertake to decide the question whether the mere breaking into a dwelling-house, unoccupied at the time, during the absence of the owner, would constitute the offense of forcible entry.     Nor has it been so understood in England, as is shown by more recent decisions.

The court, in that case, was simply passing upon a demurrer to an indictment which, in the first count, did charge entry "with a strong hand," and the fact that the premises were "in the peaceful possession of the prosecutor," but failed to allege what estate the prosecutor had therein.     This count was held not to be good; but the indictment was sustained upon the second count, which charged "that the defendant did unlawfully and injuriously, with force and arms, enter into the dwelling-house of the prosecutor."     The objection urged to this second count was, not that it failed to allege the presence of the prose-

cutor upon the scene at the time of the entry, but merely: "that as the entry is not charged in this count to be with a strong hand, as well as with force and arms, there is not a charge of actual force, inasmuch as the words force and arms, which are contained in the declaration in every action of trespass, do not necessarily imply force." This was the sole point ruled upon, as is shown by the comments of Ryder, C. J., who, in reply to the objection urged, said: "As the words 'with a strong hand' are contained in the statute, it is necessary that these words should be contained in an indictment upon the statute. But it is not necessary that these words should be contained in an indictment at the common law for a forcible entry. The words 'force and arms' in an indictment at the common law for a forcible entry, do always mean actual force." And the Chief Justice takes pains to add that "if issue had been joined in this indictment upon the plea of not guilty, *actual force must have been proved, or the defendant could not have been found guilty upon the second count; an entry without actual force being no more than a trespass.*" So, as will have been seen, Bathurst's case simply ruled that the indictment under consideration was technically sufficient to uphold a conviction of forcibly entry, in the event issue were joined thereon, and all the elements constituting the offense were proved at the trial. It certainly did not attempt to go further; and even the force of the ruling actually made was subsequently greatly restricted in its operation. Indeed, this case seems to have been regarded by the English courts as *sui generis*—a law unto itself alone. It received a decidedly adverse criticism at the hands of Lord Mansfield, in Rex *v.* Storr, 3 Burr. 1698, who declined to extend its application or to recognize that it laid down any general rule by which the sufficiency of the indictment then under consideration could be tested. Said he (page 1701): The case of Rex *v.* Bathurst does not

seem to me to lay down any such rule as 'That *vi et armis alone* implies *such* a force as will, *of itself*, support an indictment.' *There*, the fact itself naturally implied force: it was turning and keeping the man out of his dwelling-house; and done by *three* people.    Three of the judges lay a stress upon that circumstance, of its being an entry into a *dwelling-house*: and the parties who framed the indictment plainly had a view to indict for a *forcible entry*." See, also, the cases of Rex *v.* Atkyns (page 1706), and Rex *v.* Bake *et al.* (page 1731), reported in the same volume, wherein Bathurst's case was urged as authority, but the indictments were nevertheless quashed.  In the former, the indictment was "for pulling off the thatch of a man's dwelling-house, he being in peaceable possession of it."    In the latter, the indictment was for "breaking and entering a *close* (not a dwelling-house), and unlawfully and unjustly expelling the prosecutors and keeping them out of possession;" and it was held that the indictment was defective because it did not show upon its face "such an *actual* force as implies a breach of the peace, and makes *an indictable offence*."  "For, otherwise," says Mr. Justice Wilmot, "it is only a mater of *civil* complaint."    The conclusion seems irresistible, in view of the above, that the case of Rex *v.* Bathurst cannot possibly be regarded as conclusive authority for the text above quoted from Hawkins' Pleas of the Crown.

In the course of our investigation, we consulted the American & English Enc. of Law, and encountered the assertion that it was not "necessary that the force or violence should be used against the person of the occupant," but that "forcibly breaking into a house in the absence of the occupant" would constitute the offense of forcible entry. (Title "Forcible Entry and Detainer," vol. 8, page 107.) An examination of the cases cited in support of the text will show, however, that the decisions therein rendered do not purport to be declaratory of the common law, but were

based solely upon special statutes. For instance, in Mason *v*. Powell, 38 N. J. L. 576, Chief Justice Beasley quotes the New Jersey statute, which in terms declares that "breaking open the doors, windows, or other part of a house, *whether any person be in it or not*," shall constitute the offense. So, in Davidson *v*. Phillips, 9 Yerg. 93, it appears that the decision was based upon the Tennessee statute, which is couched in almost identically the same language as that above quoted. Likewise, in the cases cited from the reports of California and Wisconsin, the decisions were based upon special statutes, and do not undertake to decide what would constitute the offense at common law. See Treat *v*. Forsyth, 40 Cal. 484; Steinlien *v*. Halstead, 42 Wis. 422. These cases, therefore, are neither authoritative nor helpful in arriving at a proper conclusion in the case now before us; for as above stated, section 338 of our Penal Code adopts the common law definition of forcible entry, and contains no language which would warrant even an inference that the act of breaking into an unoccupied house during the absence of the owner was intended to be made indictable. The word "menaces" cannot be arbitrarily ignored, and it is difficult to conceive how it can be given any effect, under the peculiar phraseology of our statute, unless we hold, as herein announced, that the "menaces, force and arms" contemplated are such as are directed against the person of the occupant, and not such as are directed against the premises themselves,—if, indeed, it were possible that a house could by "menaces" be intimidated into a state of submission to an unlawful entry.

We are the better satisfied with the conclusion reached in the present case when we consider that, at common law, persons were subject to indictment only for wrongs committed against the public itself—mere civil injuries committed against individuals not being redressed under penal laws. No forcible entry was, under that law, punishable

as a criminal offense, unless it involved a breach of the peace and the security of the State, matters concerning which the public is vitally interested. Violent acts and manifestations calculated to create public disturbance and disorder were therefore rendered indictable; but acts in the nature of mere trespasses, and which did not naturally tend to excite breaches of the peace, were not considered as public, but rather as mere civil, wrongs.

2. The indictment in the present case, in a single count, charged the two offenses of forcible entry and forcible detainer. It has been held that this could properly be done. *Blackwell* v. *The State, supra.* That case, however, lays down the rule that where both offenses are thus charged, it is essential to a conviction under the indictment that both be proved. As the evidence in the case now under consideration did not warrant a conviction of a forcible entry, the verdict must be set aside.

*Judgment reversed.*