## BUCHANAN v. CRITES

No. 6647. Decided July 3, 1944. (150 P. 2d 100.)

430

See 5 C. J. S. Appeal and Error, Sec. 1533; Right of Landlord to dispossess tenant without legal process, note, 60 A. L. R. 280. See, also, 22 Am. Jur. 917; 32 Am. Jur., 847.

M. BLAINE PETERSON and LEWIS J. WALLACE, both of Ogden, for appellant.

NED WARNOCK, of Salt Lake City, for respondent.

WOLFE, Chief Justice.

This is an appeal on the judgment roll from a judgment in favor of the plaintiff, George S. Buchanan, and against the defendant, Wilford J. Crites. The facts as shown by the pleadings are as follows: The plaintiff on December 21, 1942, was in lawful possession of a specifically described dwelling unit. On that date, he and his family temporarily left the dwelling and locked all the doors. In their absence the defendant entered upon the premises and by means of a key opened the doors and removed them from their hinges. He loaded the doors in his car and took them from the premises. During the night the weather was below freezing. The plaintiff alleged that because of the housing shortage he was unable to find a suitable place for himself and his family and was, therefore, forced to reside for twelve days in the dwelling house from which the defendant had taken the doors.

The taking of the doors was alleged to have been wanton and malicious and to have caused the plaintiff great physical discomfort. It is alleged that he was forced to build up the fires in his stoves frequently and at unusual hours.

In answer the defendant admitted the taking of the doors, but countered that he was the owner and entitled to the possession of the premises. In reply the plaintiff admitted that the defendant was entitled to possession. The court instructed the jury that before it could find for the plaintiff he must prove that he was in lawful possession of the dwelling; that the defendant, without plaintiff's consent, removed and carried away the doors; and that the plaintiff was damaged thereby. The court then instructed the jury that as a matter of law, the plaintiff was in actual possession of the premises and that that possession was lawful. The jury found for the plaintiff and court entered judgment upon the verdict. From this judgment the defendant prosecutes this appeal. Since this appeal is brought on the judgment roll there is no transcript of the evidence before us. We are consequently not able to ascertain the exact nature of the tenancy by which the plaintiff held the possession of these premises. On appeal the appellant has the burden of showing wherein the trial court erred. If the record is not sufficient to determine a material question because of the fact that the appellant has failed to bring enough of it before us, the doubts should be resolved in favor of sustaining the judgment. From the record before us it appears that the court instructed the jury that the plaintiff had "lawful" possession of the dwelling unit from which the defendant took the doors. It appears also from the pleadings that the defendant had the right of possession. In view of this latter fact the tenancy could be no more than a tenancy at will. Any higher tenancy would be inconsistent with the defendant's right of possession.

It does not appear that the plaintiff was given notice to quit possession and on this record we must assume that none was given. However, at the common law a tenant at will was not entitled to such notice. *Nicholl*

v. *M'Kaeg*, 10 Barnewall & Cresswell, 721, 21 Eng. Common Law Reports, 154; *Cross* v. *Campbell*, 89 Ill. App. 489; Thompson on Real Property, Vol. 3, p. 24, Sec. 1029.

In view of the fact that the defendant had the right of entry and since he was not required at the common law to give the plaintiff formal notice to quit, it is extremely doubtful that he violated a legally protected right or breached a duty under the common law. Under the ancient common law, one entitled to possession had the right to enter and use such force as was necessary, short of death or serious bodily injury, to regain and hold possession of his land. An early (1381) statute, 5 Richard II, made the use of force in obtaining possession of land a criminal offense. But there was no civil liability. See Harper on Torts, p. 102; *Jackson* v. *Farmer*, 9 Wend., N. Y., 201; *Overdeer* v. *Lewis*, 1 Watts & S., Pa., 90, 37 Am. Dec. 440; *Kellam* v. *Janson*, 17 Pa. 467; *Stearns* v. *Sampson*, 59 Maine 568, 8 Am. Rep. 442; *Sterling* v. *Warden*, 51 N. H. 217, 12 Am. Rep. 80; *Walker* v. *Chanslor*, 153 Cal. 118, 94 P. 606, 17 L. R. A., N. S., 455, 126 Am. St. Rep. 61; *Meader* v. *Stone*, 7 Metc., Mass., 147; *Mugford* v. *Richardson*, 6 Allen, Mass., 76, 83 Am. Dec. 617; Thompson on Real Property, Vol. 3, p. 251; and the notes in 21 Harvard Law Review 295 and 33 Harvard Law Review 733.

So far as the respective rights and duties of these parties under the common law are concerned, it is clear from these authorities that the defendant breached no duty to the plaintiff unless the taking of the doors can be said to have been the use of excessive force. Had the plaintiff been in the house at the time the defendant took the doors, it is a tenable view that the defendant would have had to first request the plaintiff to quit the premises. Perhaps until a simple request has been made, the use of any force might be excessive. It is also tenable that since the plaintiff was not present when the defendant entered upon the premises, he was required to await plaintiff's return so that the request to vacate could be made. But in any event it would appear that under the common

law the defendant would not be liable to the plaintiff (a tenant at will) for the total damage occasioned by the plaintiff staying in possession of the house for 12 days after the defendant took the doors. Under the circumstances it could hardly be said that the plaintiff was in possession with the consent of the defendant. It follows that this judgment cannot be sustained solely under principles of the common law. We must, therefore, ascertain wherein and to what extent the common law has been changed by statute.

Most American jurisdictions, including Utah, have enacted Forcible Entry and Detainer Statutes. In states having such statutes the prevailing view is that "a landlord who is entitled to possession must, on the refusal of the tenant to surrender the premises, resort to the remedy given by law to secure it." 45 A. L. R. 313, 316. If the landlord, contrary to the terms of such a statute enters by force without resort to legal process, he is by statute made civilly liable to the dispossessed tenant. We held in *Paxton* v. *Fisher*, 86 Utah 408, 45 P. 2d 903, 906, that under the Forcible Entry and Detainer Statutes, 104-60-1, ff. U. C. A. 1943: "Even rightful owners should not take the law into their own hands and proceed to recover possession by violence, or by entry in the nighttime, or during the absence of the occupants of any real property."

Section 104-60-1, U. C. A. 1943 provides:

"Every person is guilty of a forcible entry, who either: (1) By breaking open doors, windows or other parts of a house, or by fraud, intimidation or stealth, or by any kind of violence or circumstance of terror, enters upon or into any real property; or * * *."

By this Act entries, which at the common law were prohibited only by criminal sanctions, have been made tortious and a civil remedy has been prescribed for the benefit of the injured tenant. The statute has created a new right and made any one who violates said right liable in a civil suit.

The courts are not entirely in agreement as to whether one must follow the procedure prescribed by the statute or whether the regular civil action can also be brought. One

view is that the procedure prescribed by the forcible entry and detainer statutes is exclusive. See *Hammond Sav. & T. Co.* v. *Boney,* 61 Ind. App. 295, 107 N. E. 480;*Walker* v. *Chanslor,* supra; *Canavan* v. *Gray,* 64 Cal. 5, 27 P. 788. In *Walker* v. *Chanslor,* supra [153 Cal. 118, 94 P. 609, 17 L. R. A., N. S., 455, 126 Am. St. Rep. 61]. The reasoning of this line of cases is set out by the Supreme Court of California as follows:

"Under these provisions [forcible entry and detainer statutes] a right of action is given to one wrongfully in actual possession of property where a forcible entry is made, even by the owner, in which action damages occasioned through the forcible entry may be recovered, and judgment for the restitution of the property had. But the Code prescribes a method of procedure and the extent of the remedy for such forcible entry, and that remedy is exclusive. A person wrongfully in possession, dispossessed by the owner of the property having a right of entry, and no excessive force being used in asserting it, is not entitled to maintain any other action that is afforded for a forcible entry under the Code. He was not entitled to maintain, under such circumstances, any action whatever under the common law, and the common-law rule has only been changed in this state to the extent, and no further, that the Code affords him a remedy under its provisions referred to which he otherwise would not have."

There is, however, another line of authority holding directly to the contrary. See *Mason* v. *Hawes,* 52 Conn. 12, 52 Am. Rep. 552; *Entelman* v. *Hagood,* 95 Ga. 390, 22 S. E. 545; *Whitney* v. *Brown,* 75 Kan. 678, 90 P. 277, 11 L. R. A., N. S., 468, 12 Ann. Cas. 768; *Mosseller* v. *Deaver,* 106 N. C. 494, 11 S. E. 529, 8 L. R. A. 537, 19 Am. St. Rep. 540; *Reader* v. *Purdy,* 41 Ill. 279.

The following quotation from *Reader* v. *Purdy,* supra, is representative of the reasoning of this latter line of cases:

"The reasoning upon which we rest our conclusion lies in the briefest compass, and is hardly more than a simple syllogism. The statute of forcible entry and detainer, not in terms, but by necessary construction, forbids a forcible entry, even by the owner, upon the actual possession of another. Such entry is, therefore, unlawful. If unlawful, it is a trespass, and an action for the trespass must necessarily lie. It is urged that the only remedy is that given by the

statute,—an action for the recovery of the possession. But the law could not expel him who has entered if his entry was a lawful entry, and if not lawful all the consquences of an unlawful act must attach to it. The law is not so far beneath the dignity of a scientific and harmonious system that its tribunals must hold in one form of action a particular act to be so illegal that immediate restitution must be made at the costs of the transgressor, and in another form of action that the same act was perfectly legal, and only the exercise of an acknowledged right. * * *

"We state, then, after a full examination of this subject, that in our opinion the statutes of forcible entry and detainer should be construed as taking away the previous common law right of forcible entry by the owner, and that such entry must be, therefore, held illegal in all forms of action."

In England in *Newton* v. *Harland*, (1840), 1 Mann & G. 644, 133 Eng. Reprint 490 and *Beddall* v. *Maitland*, (1881) L. R. 17, Ch. Div. 174, the same view had previously been taken. The court in those cases held that since the entry by force was a crime and therefore unlawful, a civil action would lie for an assault and battery arising out of such forcible entry. However, these cases were overruled in 1920 by the Court of Appeal in *Hemmings* v. *The Stoke Poges Golf Club, Ltd.*, 1920 L. R. 1 K. B. 720.

The first theory as propounded by the cases first discussed seems to more closely conform to the mosaic formed by the development of this phase of the law in American jurisdictions. The Common Law of England as adopted by the various American jurisdictions, in addition to the principles developed by court decision, included all statutes in effect in England at the time of the adoption. By virtue of a statute (5 Richard II) all forcible entries were made unlawful. This statute was a part of the common law as adopted by the American jurisdictions. Yet even though forcible entries were thus forbidden, the common law gave the ousted tenant no civil remedy. The courts held that the statute did not purport to create a legally protected interest in the tenant and a corresponding legal duty on the owner. Not every prohibition has that effect. *Hemmings* v. *The Stoke Poges Golf Club, Ltd.*, supra.

Part of the reasoning of the early common law cases was that a tenant holding over had given implied consent in his lease agreement to the landlord's entry at the termination of the lease, and this could be pleaded by way of defense. But in view of the Utah Forcible Entry and Detainer statutes this reasoning could hardly be held to be applicable. When the parties entered into the relationship of landlord and tenant it would seem that they contracted in regard to existing statutes. It consequently can be no longer held that the tenant has given irrevocable consent to the landlord's re-entry. We favor the reasoning of the latter line of cases set out above. Under our statute any entry by force is prohibited. Being prohibited, such entry was wrongful and the aggrieved party has his remedy. The Forcible Entry Statute expressed a policy that no person should enter by force, stealth, fraud or intimidation, premises of which another had peaceful possession. This had the effect of taking away the common law right of a landlord to possess his own property by no more force than was necessary and left the one against whom force was used to pursue his common law action. Whether the plaintiff would have had a right to bring an action under the Forcible Entry Statute we need not consider. It suffices that he did not in this case do so.

It is contended by the appellant that this was not an entry by "force" within the meaning of the statute. The Utah Act was copied from the California Code of Civil Procedure, Section 1159. In *Winchester* v. *Becker,* 4 Cal. App. 382, 88 P. 296, 297, the defendant had entered the premises by means of a key on two different occasions while the plaintiff was absent. The court, construing the California Act, stated in holding that there had been a forcible entry:

"The question is presented whether the defendant's entry made in the manner stated comes within the provisions of the first subdivision of section 1159 of the Code of Civil Procedure, by which every person is to be held to be guilty of a forcible entry who 'by breaking open doors, windows, or other parts of a house * * * enters

upon or into any real property.' This question we think must be answered in the affirmative. The meaning of the provision is that any * * * force is to be regarded as 'breaking open' the door or window or house. This was the construction given to the term 'break' as entering into the common-law definition of burglary, and we see no reason why a different construction should be given to it in the provision now under consideration."

See also Sprinkle v. Anderson, 57 Mont. 223, 187 P. 908; Harper v. Sallee, 376 Ill. 540, 34 N. E. 2d 860, 135 A. L. R. 189. The early Utah case of Brooks v. Warren, 5 Utah 118, 13 P. 175, uses language which would indicate that the Utah statute required more force than was held necessary under the cases last cited above, but we there construed the Act before it was amended to add an entry by "fraud, intimidation or stealth." See Laws of Utah 1884, page 334. Here it is alleged that the defendant entered upon the premises in plaintiff's absence by unlocking the doors and removing the doors from their hinges. Under the authorities construing acts similar to the Utah Act, and under the Utah statutes making it a forcible entry to enter by stealth, these facts sufficiently show a forcible entry. In this regard it is important to note "forcible entry" and "forcible detainer" while often spoken of together, are in fact separate and distinct wrongs. Schroeder v. Woody, 166 Or. 93, 109 P. 2d 597, and concurring opinion in Woodbury v. Bunker, 98 Utah 216, 98 P. 2d 948.

This is a regular civil action for damages. The Forcible Entry and Detainer Statute is relied upon to show that the defendant had a legal duty not to enter by force. The pleadings show an entry by force and damages to the plaintiff. Since the matter is here on the judgment roll, we assume that there is sufficient evidence to support the verdict.

It follows that the judgment should be affirmed. Costs to the respondent.

McDONOUGH and WADE, JJ., concur.

LARSON, Justice (concurring).

I concur in affirming the judgment. The opinion, after an elaborate and scholarly review of the authorities, showing there is a sharp split as to whether the statutory remedy of forcible entry and forcible detainer is the exclusive remedy of a dispossessed tenant, then concludes: "This is a regular civil action for damages." With this statement I agree, but fail to see any relationship between this action and the long discussion on forcible entry and detainer. Nor can I agree that an entry such as here made was an entry by either force or stealth. It is because of such implications in the rationale, that I must limit my concurrence to the result, and feel the need to cast what safeguards I can against the dangerous implications therein.

Plaintiff alleged he was in lawful possession of the premises, and filed a reply wherein he admitted that defendant was entitled to the possession of the premises. In his complaint he further alleged that on December 21, 1942, while he was absent from the premises, defendant removed the doors of the dwelling; that such acts were *malicious,* premeditated and perpetrated to *knowingly cause discomfort,* inconvenience, and mental distress and to *harass* the *plaintiff his wife and children;* that because the house was so cold plaintiff was forced to abandon it on January 3, 1943 "because of the *hardships* created by the unlawful, *wanton* and *malicious* act of the defendant." (Italics mine) "That because of the unlawful, wanton and malicious and unconscionable acts of defendant, plaintiff was caused great mental distress and physical discomfort in that he worried and was concerned about the health of his wife and three minor children, and was caused great physical discomfort as were his wife and minor children * * *" and prayed actual damages in the sum of $5000 and punitive damages in the sum of $5000.

It is conceded by the prevailing opinion that there is no detainer involved in this suit, and no claim of any dispossession, no prayer for repossession or expulsion of the

intruder, and no claim of damages for loss of possession or interference with, or injury to the right of possession. I am unable to find any adjudicated case holding that mental distress and worry over the health of a member of the family is recoverable in forcible entry. Likewise, I find no authority for a plaintiff in an action in forcible entry recovering damages for harassment. Nor do I know of any rule of law which permits plaintiff in an action in forcible entry to recover damages for discomforts, and worries suffered by other members of the family. Is it not elemental that a cause of action for physical suffering and discomfort lies in the person who suffers, and is not even assignable to say nothing about granting an original right to another person? I submit this cause was not founded or pleaded upon any rights, duties or liabilities fixed by or growing out of the forcible entry statute.

Chapter 60 of Title 104, U. C. A. 1943, entitled "Forcible Entry and Detainer," is possessory in its content. It has to do with actions to obtain possession, or protect one in retaining his occupancy of real property. I find nothing in the chapter upon which any legal action can be predicated which is not founded upon the dispossession or attempted dispossession of the plaintiff. It provides a summary remedy for the *recovery* of real property in case of forcible entry thereon, or the unlawful detainer thereof. *Voyles* v. *Straka,* 77 Utah 171, 292 P. 913; *Paxton* v. *Fisher,* 86 Utah 408, 45 P. 2d 903. Said Mr. Justice Wolfe, now Chief Justice, in his concurring opinion in *Woodbury* v. *Bunker,* 98 Utah 216, 98 P. 2d 948, 953: "The statute is directed to preserve one's right of occupancy whether personal or constructive." And in *Paxton* v. *Fisher,* supra [86 Utah 408, 45 P. 2d 909], the same justice said: "Where one moves in on the possession of real property * * * in the absence of the latter, and *remains,* so as to constitute it more than a trespass, he does so at his peril." (Italics mine) To maintain an action for forcible entry, plaintiff must show his possession of the premises; an entry by defendant through fraud, stealth, force or violence; and a turning out or dispossession

of plaintiff, *Castro* v. *Tewksbury,* 69 Cal. 562, 11 P. 339; the gist of the action being the wrong which inheres in forcibly entering upon and invading the possession of another. *San Francisco & Sub. Home Bldg., Soc.* v. *Leonard,* 17 Cal. App. 254, 119 P. 405; and plaintiff's judgment would be for restitution of the premises with damages occasioned by any forcible entry. *Dahlquist* v. *Mattson,* 40 Idaho 378, 233 P. 883.

"It is a remedy for the actual possession of realty, whether rightful or wrongful, against forcible invasion, its objects being to prevent disturbances of the peace. * * * The action is strictly possessory in its nature." 26 C. J. 811. See also 36 C. J. S., Forcible Entry and Detainer, § 3, p. 1146, and annotation in 101 A. L. R. 476. Damages can be allowed plaintiff only as an incident to the right of possession, *McCleary* v. *Crowley,* 22 Mont. 245, 56 P. 227; in the absence of any claim to recover possession there can be no award of damages, *Stevens* v. *Jones,* 40 Wash. 484, 82 P. 754; 36 C. J. S. Forcible Entry and Detainer, § 58, p. 1197. Without a claim for possession, damages must be asserted in an ordinary civil action, *Stevens* v. *Jones,* supra.

The first question for consideration is whether there be a legal remedy for the damage alleged to have been suffered by plaintiff. A tort has been variously defined as the violation of a right, given, or the omission of a duty imposed by law, *Mansfield Const. Co.* v. *Gorsline,* Tex. Com. App., 292 S. W. 187; breach or violation of a duty or infringement of right, *Kamm, Inc.,* v. *Flink,* 113 N. J. L. 582, 175 A. 62, 99 A. L. R. 1; any act done or omitted to be done contrary to the obligation of the law, *Garber* v. *Whittaker,* 6 W. W. Harr., Del., 272, 174 A. 34. The question is then whether defendant violated any right of plaintiff. The law recognizes the physical integrity of every person, and protects them from violent and uninvited touchings of their person by another. Violation of this right is known as a battery, or when there is a threat or attempt at such violation, it is an assault. There is in the instant case no claim of such a direct force applied to the person of the plaintiff as would constitute a battery, but there is an

application of force—the forces of nature—to the person of the plaintiff, which force was set in motion by the act of defendant in removing the exterior doors of the house which plaintiff was lawfully occupying as a dwelling at the time. Thus the right of plaintiff which was here invaded is the same right protected by the criminal law under the name of a battery—the right of personal security and bodily integrity. The right of bodily security includes not only freedom from the use of physical force upon the body; but the right of security of bodily comfort which one has provided for oneself, including protection from cold, heat, dust, storm, odor and noise. *Brough* v. *Ute Stampede, Ass'n,* 105 Utah 446, 142 P. 2d 670; *Ludlow* v. *Colorado Animal By-Products Co.,* 104 Utah 221, 137 P. 2d 347. Wrongfully dispossessing one of his security against these inconveniences and discomforts is an infringement of his right of physical security and integrity. The conclusion follows, therefore, that defendant did invade a right of plaintiff. Admitting there is an invasion of a right of plaintiff, is there any appropriate legal action for redress of such wrong? Three possible courses suggest themselves: (a) An action in trespass vi et armis; (b) an action under the statute to recover possession of the property; (c) an action on the case for the damages suffered. As to (a) no action of trespass could be brought because the force here applied is not direct and violent against the person of plaintiff. 26 R. C. L. 930, Sec. 3; Bouvier's Law Dictionary. As to (b) an action to recover possession, plaintiff might have maintained such an action, but the doors would still have been missing from the house, and defendant could have immediately commenced an action at law to oust him. Judgment in such summary action would probably be entered in time to prevent plaintiff from actually re-entering into possession, so no useful purpose would be subserved thereby. *Paxton* v. *Deardon,* 94 Utah 149, 76 P. 2d 561.

(c) It was for such situations as the one here involved that the action on the case was originated at the common

law. The court in *Hummer* v. *R. C. Huffman Const. Co.,* 7 Cir., 63 F. 2d 372, 373, said:

"The essential elements of an action in case are: (1) The existence of a duty imposed by law owing by one to another; (2) a violation of that duty; and (3) a consequent injury so connected with the failure to perform that duty that the failure is the proximate cause of the injury." (Citing cases.)

And in *Jaeger Research Labs.* v. *Radio Corp.,* 3 Cir., 90 F. 2d 826, 827, it was said, quoting from 1 Chit. Pl. 133:

" 'Actions on the case are founded on common law or upon acts of parliament, and lie generally to recover damages for torts not committed with force, actual or implied'."

This latter definition was cited with approval in *Williamson* v. *Columbia G. & E. Corp.,* 3 Cir., 110 F. 2d 15. And in *Battles* v. *Nesbit,* 149 Pa. Super 113, 27 A. 2d 694, 697, it is said:

"As used at the present day, case is distinguished from assumpsit and covenant, in that it is not founded upon any contract, express or implied; from trover, which lies only for unlawful conversion; from detinue and replevin, in that it lies only to recover damages; and from trespass, in that *it lies for injuries committeed without force,* or for forcible injuries which damage the plaintiff consequentially only, and in other respects." (Italics added.)

The action of trespass on the case has been used in the following situations: To enforce anti-trust laws (*Williamson* v. *Columbia G. & E. Corp.,* supra; *Jaeger Research Labs.* v. *Radio Corp.,* supra); damages from impairment of land as security for a mortgage (*Atlantic Coast Line Ry.* v. *Rutledge,* 122 Fla. 154, 165 So. 563, *Hummer* v. *R. C. Huffman Sons Co.,* supra); interference with business prospects, (*Louis Kamm, Inc.* v. *Flink,* supra; *Sparks* v. *McCrary,* 156 Ala. 382, 47 So. 332, 22 L. R. A., N. S., 1224; *Welch* v. *Seattle & M. R. Co.,* 56 Wash. 97, 105 P. 166, 26 L. R. A., N. S., 1047); pollution of wells by seepage of oil (*Pan Amer. Petrol Co.* v. *Byars,* 228 Ala. 372, 153 So. 616); transmission of false or erroneous messages. (*Wise* v. *Western U. Tele-*

*graph Co.,* 6 Harr. 155, Del., 172 A. 757; *McCord* v. *Western Union Tel. Co.,* 39 Minn. 181, 39 N. W. 315, 317, 1 L. R. A. 143, 12 Am. St. Rep. 636).

While no cases directly in point have been cited in the briefs of either party, and I have been unable to find any, there are some analogous situations. In *Adams* v. *Young,* 44 Ohio St. 80, 4 N. E. 599, 603, 58 Am. Rep. 789, fire was set by a boiler, and *because of a gale of wind* which was blowing at the time, spread to plaintiff's house. In the course of its opinion, the court quotes from *Poeppers* v. *Missouri K. & T. R. Co.,* 67 Mo. 715, 29 Am. Rep. 518:

" 'As the rise of the wind was a thing which a prudent man might reasonably have anticipated, it could not be regarded as the intervention of a new agency, so as to relieve the company from the consequences of its negligence in permitting the fire to escape, * * *'."

The court held that no new or intervening cause was shown, and affirmed judgment in favor of plaintiff. So it is in this case, the rigors of the weather, which actually caused the discomfort to plaintiff are not a new or intervening cause which should relieve defendant of liability for his intentional acts. It is the specific and intended effect of defendant's conduct, the very cause he intended to put into operation, and the result meant to bring about. In *Cahill* v. *Eastman,* 18 Minn. 324, 18 Gil. 292, 10 Am. Rep. 184, defendant excavated a tunnel under the whole length of an island in the river, the tunnel going directly under the plaintiff's mill property. Water from the river broke into the tunnel, flowing through it with such violence as to wash out and undermine the land on which plaintiff's mill stood, injuring the mill and its contents. The court held that since defendant by his voluntary act brought the water to where it could do the damage complained of, defendant was liabel, regardless of negligence, citing *Fletcher* v. *Rylands,* 1 Exch. L. R. 279, wherein defendant collected water on the land in a reservoir. The water seeped out through the land and into the mines of plaintiff. Defendant was held liable regardless of negligence in construction or operation

of the reservoir. Both of these cases are reasoned and decided on the theory that the defendant did an act which *turned loose on the plaintiff or his property, a force of nature, which would not otherwise have acted upon plaintiff to his damage.* Such is the situation in the instant case.

*Mears* v. *Dole,* 135 Mass. 508, is an equity case, but illustrates further that there may be an action for damages resulting when an act of the defendant sets in motion a force of nature to plaintiff's damage. There defendant owned seashore land, which he excavated and hauled away, so that the sea water seeped into plaintiff's land rendering his well unfit for use. The court said:

"The defendant by his excavations, for his own purposes, brought the sea upon his land, where it would not have been but for the excavations, and as a consequence it has escaped, and acted upon the plaintiff's land so as to cause damage, and for this he must be held responsible."

Another similar case, though tried on the nuisance theory, is *Birmingham Water Works Co.* v. *Martini,* 2 Ala. App. 652, 56 So. 830, 832, wherein defendant delivered water through private pipes to its users. These pipes which were to be kept in repair at the expense of the individual user, were full of holes and so allowed the water to escape forming pools which because of mosquito breeding foul odors, *rendered plaintiff's house uninhabitable,* and caused him great inconcenience and mental distress. The court said:

"Injury to the feelings—mental harassment—is an element of actual damages. 'Wounding a man's feelings is as much an element of actual damages as breaking his limb.' *Head* v. *Georgia P.* [*R. Co.*], 79 Ga. 358, 7 S. E. 217, 11 Am. St. Rep. 434."

Going on the court said:

"The nuisance complained of in this case was not merely a nuisance which affected the value of property. It affected the home, 'a place designed as a shelter for appellee, and not merely an investment in real estate,' valuable only for its rents and profits. (citing case.) Any condition which created annoyance and inconvenience

to appellee while in his home was an offense against his *person*— a *personal* injury. * * * It cannot be denied that for the *physical* annoyances and inconveniences suffered by appellee on account of the nuisance, he was entitled to damages at the hands of the jury. If he suffered physical annoyance, then, as a necessary corollary, he suffered mental harassment. There may exist mental annoyance or harassment without a corresponding physical disturbance. There cannot be physical annoyance without a corresponding mental harassment. * * *

He [plaintiff] was entitled to recover for any mental annoyance, harassment, discomfort, or pain that he suffered by reason of the physical annoyances and discomforts to which he was subjected during the period which caused this litigation." (Citing cases) (Italics in original)

This cause as to recovery for mental annoyance and harassment, has been cited and followed in *Browning* v. *Fies*, 4 Ala. App. 580, 58 So. 931, and *McConnell* v. *United States Express Co.*, 179 Mich. 522, 146 N. W. 428, Ann. Cas. 1915D, 80. In *Wyatt* v. *Adair*, 215 Ala. 363, 110 So. 801, 804, it was held that complaint was good as against demurer, when it alleged that the landlord had constructively evicted a white tenant by leasing property with a common toilet to a negro family. The court there also allowed recovery for mental anguish, saying:

"In the nature of the case, mental anguish was a direct consequence of the wrong or breach of convenant complained of. If there was a constructive eviction, it consisted in such disregard of the rights of the tenant as knowingly rendered his contacts unbearable by reason of humiliation of himself and family. There was no error in the instructions touching recovery for mental anguish. Such damages were limited to the mental distress of plaintiff, if found by the jury; one element of mental pain necessarily being the position in which his family were placed by the act of defendant."

The covenant referred to is an implied covenant, and based largely on custom in the vicinity.

Let us now consider the case at bar in the light of the foregoing authorities. Plaintiff was lawfully in possession of the premises though temporarily absent. At that time defendant entered and did an act which rendered the

premises unfit for further habitation, and which caused physical suffering and mental annoyance to plaintiff. The question as to whether he had the right to enter peaceably is not before us, and we need not decide it, but I do believe that he had not the right to do acts which rendered the premises unfit for habitation by plaintiff, who was lawfully in possession of the house as a dwelling, and which caused him mental anguish and physical suffering. As to plaintiff, his acts were wrongful, and there being an appropriate legal remedy, plaintiff is entitled to recover. There are adequate legal remedies provided for owners and landlords to evict occupants of their real property. These, defendant made no effort to invoke, as he should have done.

It is urged that because of the situation and the relationship that existed between the parties, defendant had the right to do the acts of which complaint is made. The court instructed the jury that plaintiff was lawfully in possession of the premises, but by admission in the pleadings, defendant was entitled to immediate possession thereof. Under this set of facts, the best position that plaintiff could occupy is that of a tenant at will or a tenant at sufferance. At common law, the owner of the property might enter and dispossess such an occupant, provided he used no more force than was necessary. *Hewitt* v. *State*, 108 Fla. 335, 146, So. 578; *Lewis* v. *State*, 99 Ga. 692, 26 S. E. 496, 59 Am. St. Rep. 255; *Ft. Dearborn Lodge IOOF* v. *Kline*, 115 Ill. 177, 3 N. E. 272, 56 Am. Rep. 133; *Stearns* v. *Sampson*, 59 Me. 568; 8 Am. Rep. 442; *Fults* v. *Munro*, 202 N. Y. 34, 95 N. E. 23, 37 L. R. A., N. S., 600, Ann. Cas. 1912 D, 870; *State* v. *Ross*, 49 N. C. 315, 69 Am. Dec. 751; *Smith* v. *Reeder*, 21 Or. 541, 28 P. 890, 15 L. R. A. 172. And at common law, this right to dispossess would have been a complete answer or defense to plaintiff's complaint, for unless defendant used unnecessary force, plaintiff would have no cause of action. In this purisdiction, however, the common law has been modified by statutes dealing with forcible entry and forcible and unlawful detainer, Secs. 104-60-1, 2 and 3, U. C. A. 1943. These enactments give

a summary remedy to recover possession when one is forcibly or unlawfully dispossessed. Their purpose is to prevent even the owner or person with the right of possession from taking the law into his own hands. *Paxton* v. *Fisher*, 86 Utah 408, 45 P. 2d 903. In other words, the purpose of these statutes is to prevent breaches of the peace, either actual or constructive, since they not only prohibt entries and detainers by the use of actual force, but also getting possession of real property by the use of stealth or fraud. In other jurisdictions it has been held that in view of such statutes, and the legislative policy which they establish, one ousted by acts or conduct which are prohibited by the forcible entry or forcible or unlawful detainer statutes may pursue his remedy under the statute and recover possession of the property, or he may waive the right of possession, and bring a common law action for damages suffered because of defendant's conduct. *Mason* v. *Hawes*, 52 Conn. 12, 52 Am. Rep. 552; *Entelman* v. *Hagood*, 95 Ga. 390, 22 S. E. 545; *Whitney* v. *Brown*, 75 Kan. 678, 90 P. 277, 11 L. R. A. N. S., 468, 12 Ann. Cas. 768; *Mosseller* v. *Deaver*, 106 N. C. 494, 11 S. E. 529, 8 L. R. A. 537, 19 Am. St. Rep. 540; *Reader* v. *Purdy*, 41 Ill. 279. The statutes relating to forcible entry and to forcible and unlawful detainer deny to the owner, or other person entitled to immediate possession of real property, the right to evict, eject, or dispossess one in peaceable possession thereof against the will of such person, by any means other than an action at law. If, therefore, one in lawful possession who is forcibly or unlawfully dispossessed, waives the right to repossession and brings an action for damages suffered by the dispossession, the defendant in such action cannot plead in defense the fact that he used no more force than was necessary. He is not permitted to use any force, or stealth or fraud to obtain possession and he cannot plead his own violation of the law as a defense to the action.

What is said herein must be limited to situations similar to the one here involved—that is where the occupant was *lawfully* in possession. The question of the owner's conduct

448

toward one unlawfully in *possession* of the premises is not here involved and therefore I express no opinion thereon. It is not to be implied from anything said herein, or any case cited, that in this jurisdiction an action may lie for mental suffering alone. That question is not here. Nor do I imply that factual situations which existed in some cases cited would be held to constitute a cause of action. As far as the statements quoted are concerned I think they state the law.

MOFFAT, J., deceased.